## WILLIAM J. MURPHY ET AL.

### *vs.*

## THOMAS W. STUBBLEFIELD.

*Pleading*: *demurrers; errors in pleading; one good count.*
*Usury*: *strictly pleaded; how to be proved; not by*
*cross-examining defendant. Discounting notes.*
*Joint endorsers*: *waiver of pro-*
*test; liability.*

To mount up to a first error in pleading, a demurrer must be equivalent to a general demurrer.　　　　　　　　　p. 27

A declaration with one good count can not be reached by a general demurrer.　　　　　　　　　p. 27

Usury is a statutory offense (Code, Article 49, section 5), and the terms of the statute must be complied with strictly.
　　　　　　　　　p. 27

Usury only applies to loans, and it does not apply to a sale of negotiable paper.　　　　　　　　　p. 27

To discount paper, in banking parlance, is a mode of loaning money with the right to take out in advance the interest allowed by law.　　　　　　　　　p. 27

If the discount exceeds the regular rate of interest, the transaction is within the usury law.　　　　　　　　　p. 28

A plea alleged, "That on a day certain the defendant sent to the plaintiff two promissory notes of one thousand dollars each, with the understanding that the notes were to be discounted by the plaintiff; and that the plaintiff gave the defendants only thirteen hundred dollars and refused to pay more; but the defendants then tendered to the plaintiff the entire sum advanced, with interest, and demanded the return of the notes, which the plaintiff refused; and that the amount disputed in

this case is usurious interest demanded on said notes and retained by the defendant from the amount of said notes."

While this plea may be open to criticism as to its form, it contains all of the requisites for a plea of usury as set forth in the Code.                                                    p. 28

Where the maker of a promissory note to his own order endorsed it with others, who "jointly and severally guaranteed it, with waiver of demand, protest and notice," all the parties to the note are liable, whether as endorsers or guarantors.    p. 29

A defendant can not establish usury, fraud, misrepresentation or deceit under the guise of a cross-examination of the plaintiff.
                                                            p. 30

*Decided May 1st, 1918.*

Appeal from the Superior Court of Baltimore. (STAN-TON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John L. G. Lee* and *J. Albert Baker,* for the appellants.

*Charles F. Diggs* (with whom was *Watson E. Sherwood* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This action is one in assumpsit and the first six counts in the declaration are the common counts in that form of action. The seventh count is as follows:

> "And for that one Fred. A. Dolph on the 24th day of November, 1916, by his promissory note now over-due, promised to pay to himself, or order, $1,000 four months after date, and the defendants endorsed the

same to the plaintiff, and jointly and severally guar-
anteed payment of said note, and the said note was
duly presented for payment and was dishonored, where-
of the defendant had due notice and did not pay the
same."

The eighth count is similar to the seventh, the note men-
tioned in it bearing the same date as that declared on in the
seventh count, having the same length of time to run and for
the same amount. The two notes mentioned were attached
to the *narr.*, each being in this form:

$1,000.00.      Baltimore, Md., November 24, 1916.

Four months after date I promise to pay to the
order of Myself, One Thousand Dollars, at Balti-
more, Md., with interest at 6 per cent. from date.
Value received.

                              Fred. A. Dolph,
Endorsed:              Calvert Bldg., Baltimore, Md.
  Fred. A. Dolph.

For value received we hereby jointly and severally
guarantee the payment of the within mentioned note;
and also hereby jointly and severally waive demand,
protest and notice of non-payment thereof.

                    Wm. J. Murphy,
                    Anna C. Murphy,
                    Wm. Bevan,
                    Susie R. Bevan,
                    Herman A. Rehling,
                    H. T. Weber,
                    James F. Davis,
                    H. S. Robinson,
                    T. W. Stubblefield.

When the time of maturity arrived neither of the notes
were paid, but were protested for non-payment, and notice
was mailed to all those whose names appeared on the back of
the note with the exception of the maker.

The suit was brought under the speedy judgment act ap-
plicable in the City of Baltimore and contained the affidavit

required by the Act of 1886, Chapter 184. Within the time required under the Act for the filing of pleas, in order to prevent a judgment by default, all of the defendants named with the exception of H. S. Robinson appeared and filed the general issue pleas. In the affidavit attached to those pleas the defendants admitted $1,344.00 to be due to the plaintiff, and disputed the balance of his claim, and in August, 1917, the plaintiff took a judgment for the sum of $1,344.00 with costs against the defendants who had pleaded. The next step took place on December 3, 1917, when the defendants obtained leave of the Court to file an additional plea and the same day the following plea was entered:

"That on the twenty-fourth day of November, 1916, defendants sent to plaintiff two notes of one thousand dollars each, with the understanding that said notes were to be discounted by plaintiff; that plaintiff gave to defendants only thirteen hundred dollars, and refused to pay more; that defendants then tendered to plaintiff the entire sum advanced, with interest, and demanded the return of notes, which plaintiff refused; and that the amount disputed in this case is usurious interest demanded on said loan and retained by plaintiff from the amount of said notes."

A motion *ne recipiatur* to the additional plea having been overruled, a demurrer was entered. The contention of the appellants is that the legal result of the demurer was to make the error mount up to the first error in pleading, and that such error is to be found in the seventh count of the declaration, and consists in a misjoinder of two causes of action in a single count. The insuperable difficulty for the adoption of this view lies in the fact, that in so mounting up, the demurrer becomes a general demurrer to the declaration, and as long as there is one good count, the narr. will stand and cannot be reached by a general demurrer. In this case the action was in assumpsit, the first six counts being the usual common counts in that form of action, and as repeatedly held, these not being open to demurrer, even if the seventh count

could have been held liable to demurrer if standing alone, the present objection to it is not maintainable as enough would be left to enable the plaintiff to maintain the action.

The judge of the Superior Court sustained the demurrer to the additional plea and the correctness of that ruling is now called in question by this appeal. Apparently what the pleader had in mind in preparing that plea, was to set up the defense of usury with regard to both of these notes. What is requisite for a valid plea of usury has remained practically unchanged since the Act of 1845, Chapter 352, now embodied in the Code, Article 49, section 5. Being a statutory defense, the terms of the Statute must, of course, be strictly complied with. If the plea sets up a loan, then the plea was good, for usury applies only with regard to a loan. On the other hand, if the plea sets up a sale, then the plea was bad, since on the sale of negotiable paper the vendee is in an entirely different position from the one who makes a loan upon similar paper. The term which is used in the plea itself is "discounted," and it is, therefore, material to inquire whether under the circumstances of this case the use of the word "discount" implies a sale or a loan. In the *Amer. and Eng. Ency. of Law* (2nd Ed.), Volume 2, page 469, it is said: "To discount paper as used in a business of banking is only a mode of loaning money with the right of taking the interest allowed by law in advance." The term has been defined by this Court in almost the same language in *Weckler* v. *First National Bank,* 42 Md. 592, where JUDGE MILLER says: "The ordinary meaning of the term 'to discount,' is to take interest in advance, and in banking, is a mode of *loaning money.* It is the advance of money not due until some future period, less the interest which would be due thereon when payable." And the same rule has been reaffirmed in *Black* v. *the Bank,* 96 Md. 428, in which JUDGE PEARCE, after quoting from JUDGE MILLER, adds: "Only the legal rate of interest would be due on the principal when payable, and thus JUDGE MILLER's definition of the term is shown to be

the same as that given above. If the legal rate were exceeded, a presumption *might* arise that the parties intended, or the law implied a sale rather than a discount, because a sale (between ordinary parties at least) would be legal at any rate of deduction agreed on, but where *a bank* discounts paper at a rate exceeding that allowed by law, the transaction would be within the usury law."

While the plea in this case may be open to criticism as to its form, each and all the requisites for a plea of usury, as set forth in the section of the Code referred to, will be found to be contained in it, and it is specifically alleged that it was the purpose in the making and guaranteeing of the note, to have the same discounted. There is no suggestion legitimately to be drawn from anything contained in the plea, that it was the idea, either of the maker or of the guarantors, that it was for the purpose of a sale; on the contrary, the plea alleges that the note was drawn to be "discounted," and that the deduction made therefrom was such an amount as to constitute usury. There is nothing in the language of the plea itself to give any force to a presumption of sale, rather than loan, so as to make effective the presumption which, as noted by JUDGE PEARCE, may but does not necessarily arise.

In the view of this Court, therefore, it is error to have sustained the demurrer to the plea, an error which was highly prejudicial to the defendants, since it took away from them the opportunity of presenting evidence to substantiate the theory of usury. See authorities already cited, and very full note upon this subject in *Pearsell* v. *Jeffreys,* 105 Am. St. Rep. p. 509.

No valid objection arises from the fact, that so far as appears either from the pleadings or evidence, there was no attempt made upon the part of the holder of these notes to recover on them from the maker, Fred. A. Dolph. The present defendants were clearly liable upon these notes whether viewed as endorsers or guarantors. Any question upon that ground is effectively settled by *Wood Machine Co.* v. *Ascher,* 103 Md. 133, and cases therein cited.

The record contains four bills of exceptions, but they all relate to a single question and may be disposed of together.

At the trial of the case the plaintiff was put upon the stand and testified to being engaged in the real estate business in the City of Washington, and that he sometimes bought commercial paper; that in December, 1913, H. S. Robinson called on him, stating that he had a note which he wished to sell, and that he produced to the plaintiff one of the notes in question, and that the plaintiff purchased the same; that three days later he purchased the second note from him; that the witness gave him his check in payment for both notes. The notes were then read in evidence and the plaintiff rested.

The defendants' counsel called for the production of the check given in payment for the notes, which was objected to, and the sustaining of that objection constitutes the first exception.

The second bill of exceptions was to the ruling of the Court in sustaining an objection to a question asked on cross-examination, "How much did you pay Mr. Robinson for those notes?"

The third bill of exceptions was to a similar ruling by the Court to a question also asked on cross-examination of the same witness, whether he had ever had any conversation with a Mr. Bracy in regard to those notes; and

The fourth bill of exceptions was to the refusal of the Court to permit the plaintiff on cross-examination to be asked, "Did or did you not understand that Mr. Robinson was not the owner of those notes?"

The demurrer to the additional plea having been sustained, these rulings were in harmony therewith, since the plain purpose in each one of the questions objected to was to establish, by the plaintiff himself, usury. The burden of proof to sustain the plea of usury necessarily devolved upon the defendants. It was the essential part of their case. The questions were objectionable at the time, and in the manner, when pro-

pounded, because they were not legitimate cross-examination of the plaintiff, and a defendant can not establish usury, fraud, misrepresentation or deceit under the guise of a cross-examination of the plaintiff. *Williams* v. *Banks,* 19 Md. 38.

The rule is stated in *Jones on Evidence* (2nd Ed.), section 820, in this way: "The rule sustained by the Supreme Court and which prevails in most of the States is that the cross-examination can only relate to facts and circumstances connected with the matters stated in the direct examination of the witnesses. If any party wishes to examine a witness as to other matters he must do so by making the witness his own," and with slight verbal changes the same rule is announced by Mr. Greenleaf, in his work on *"Evidence"* (16th Ed.), section 445, and it has been followed in this State in numerous instances, of which *Griffith* v. *Diffenderffer,* 50 Md. 478, is a good example. See also, *Herrick* v. *Swomley,* 56 Md. 439. Almost the same question here presented arose in *Youmans* v. *Carney,* 62 Wis. 580, where it was held that if the direct examination of the payee of a note is confined to the genuineness of a signature or the identity of the note, the adverse party has no right to cross-examine as to consideration. See also *Bell* v. *Prewitt,* 62 Ill. 361.

The defendants might, had they so desired, have called the plaintiff as their own witness, and have examined him upon the several questions which were propounded to him on the cross-examination, but which were ruled out as already noted. If they had done this the evidence should have been admitted, but the defendants would have been bound thereby except as provided by section 5 of Article 35, Code, P. G. L. In the manner in which it was attempted to be introduced, not being legitimate cross-examination, the ruling of the Court with regard to them was free from error.

It follows from what has been said, that the judgment of the Court below must be reversed.

> *Judgment reversed, and cause remanded for a new trial, costs to be paid by the appellee.*