# FRED A. DOLPH

## vs.

## THOMAS W. STUBBLEFIELD.

*Promissory Note—Plea of Usury—Bona Fide Purchase—Examination of Witness.*

In an action on certain notes, that plaintiff testified that he is the holder of the notes, and offers the notes in evidence, does not justify defendant in cross-examining him as to what he paid for the notes, this not being a matter referred to in the direct examination. p. 155

Where the important question in the case was whether the transaction, by which the plaintiff obtained the notes from another person, was a loan of money or a purchase of the notes, a question asked by defendant of such person, on direct examination, for whom he was "borrowing" from the plaintiff, was objectionable as leading. p. 155

The refusal to permit a certain question to be asked is not ground for reversal if the evidence sought is otherwise obtained. p. 155

In an action on a note, the burden is on the defendant to sustain the plea of usury, and where he fails to meet that burden and there is no evidence legally sufficient to support the plea, the court should not submit the question of usury to the jury. p. 156

One who purchased a negotiable promissory note before maturity, without notice of any infirmity therein or defect in the title of the seller, is entitled to recover thereon against the maker. p. 156

The Negotiable Instruments Act (Code, Art. 13, sec. 27) expressly provides that a note may be made payable to the order of the maker. p. 157

In an action on a promissory note, *held* that there was no evidence legally sufficient to show that the transaction by which plaintiff acquired the note from a previous holder involved a usurious loan. p. 157

*Decided November 21st, 1919.*

Appeal from the Superior Court of Baltimore City (BOND, J.).

The cause was argued, together with that next following, before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*John G. L. Lee,* with whom was *J. Albert Baker* on the brief, for the appellants.

*Watson E. Sherwood,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought under the Speedy Judgment Act applicable to the City of Baltimore by the appellee, the endorsee or holder, against the maker, of the following promissory notes:

"1,000.          Baltimore, Md., November 24, 1916.

"Four months after date I promise to pay to the order of myself one thousand dollars at Baltimore, Md., with interest at 6 per cent. from date.    Value received.

"Fred A. Dolph,
"Calvert Building,
"Baltimore, Md."

Endorsed:

"Fred A. Dolph,

"For value received we hereby jointly and severally guarantee the payment of the within mentioned note; and also hereby jointly and severally waive demand, protest and notice of non-payment hereof.

"Wm. J. Murphy,
"Anna C. Murphy,
"Wm. Bevan,
"Susie R. Bevan,
"Herman A. Rehling,
"Louisa Rehling,
"H. T. Weber,
"James F. Davis,
"H. S. Robinson,
"..............
"T. W. Stubblefield."

"1,000.        Baltimore, Md., November 24, 1916.

"Four months after date I promise to pay to the order of myself one thousand dollars at Baltimore, Md., with interest at 6 per cent. from date. Value received.

> "Fred A. Dolph,
> "Calvert Building,
>     "Baltimore, Md."

Endorsed:

"Fred A. Dolph,

"For value received we hereby jointly and severally guarantee the payment of the within mentioned note; and also hereby jointly and severally waive demand, protest and notice of non-payment hereof.

> "Wm. J. Murphy,
> "Anna C. Murphy,
> "Wm. Bevan,
> "Susie R. Bevan,
> "Herman A. Rehling,
> "Louisa Rehling,
> "H. T. Weber,
> "James F. Davis,
> "H. S. Robinson,
> "...............
> "T. W. Stubblefield."

The declaration contained the common counts in assumpsit and a special count on each of the notes. The defendant filed the general issue plea, and in his affidavit thereto admitted that $1,344.00 of the claim was due and owing, and stated that $656.00 was disputed. Judgment was entered for the amount admitted to be due by the plea, and issue was joined as to the amount disputed. Thereafter the defendant by leave of Court filed the following additional plea, on which issue was joined:

"That on the 24th day of November, 1916, defendant sent to plaintiff two notes of one thousand dollars each, with the understanding that said notes were to be discounted by plaintiff; that plaintiff gave to defendant only thirteen hundred dollars, and refused to

pay more; that defendant then tendered to plaintiff
the entire sum advanced, with interest, and demanded
the return of notes, which plaintiff refused; and that
the amount disputed in this case is usurious interest
demanded on said loan and retained by plaintiff from
the amount of said notes."

The trial of the case resulted in a judgment in favor of
the plaintiff for $780.89, from which this appeal was taken.

The plaintiff, Thomas W. Stubblefield, testified that he was
the holder of the two notes, and the notes were offered in
evidence. Harry S. Robinson, a witness for the defendant,
then testified that he endorsed the notes and disposed of them
to the plaintiff under the following agreements:

"For and in consideration of the sum of eight hun-
dred dollars ($800.00) I hereby agree to sell to Thomas
W. Stubblefield one certain promissory note for $1,000
made at Baltimore, Maryland, dated November 24,
1916, signed by Fred A. Dolph (as myself), endorsed
by said Fred A. Dolph and said note endorsed and
guaranteed by the following parties: Wm. J. Mur-
phy, Anna C. Murphy, Wm. Bevan, Susie R. Bevan,
Herman A. Rehling, Louisa Rehling, H. T. Weber
and James F. Davis. Out of said $800 the sum of
$600 to be paid to me immediately upon the execution
and delivery of this agreement, the remaining $200 is
to be held by the said Thomas W. Stubblefield until
the said note is paid in full. Should the said Thomas
W. Stubblefield have to enter suit or have to pay attor-
neys' fees or other costs for the collection of said note
in that event I waive all right in and to the said $200.
If said note is paid in full at maturity the said $200
held by the said Stubblefield is to be paid to me.
(This $200 has no reference to the $200 which I allow
the said Stubblefield off of said $1,000 note.) I fur-
ther certify that I am the owner and holder of said
note and that same was given to me for salary indebt-
edness due to me by the parties to same.

"Witness my hand and seal this 13th day of
December, A. D. 1916.

H. S. Robinson "

"In the presence of:
  "G. A. Street.
"Agreed to:
  "T. W. Stubblefield,
    "Room 210 Colorado Building,
      "Washington, D. C."

"For and in consideration of the sum of eight hundred dollars ($800.00) I hereby agree to sell to Thomas W. Stubblefield one certain promissory note for $1,000 made at Baltimore, Maryland, dated November 24, 1916, signed by Fred A. Dolph (as myself), endorsed by said Fred A. Dolph, and said note endorsed and guaranteed by the following parties: Wm. J. Murphy, Anna C. Murphy, Wm. Bevan, Susie R. Bevan, Herman A. Rehling, Louise Rehling, H. T. Weber and James F. Davis. Out of said $800 the sum of $700 to be paid to me immediately upon the execution and delivery of this agreement, the remaining $100 is to be held by the said Thomas W. Stubblefield until the said note is paid in full. Should the said Thomas W. Stubblefield have to enter suit or have to pay attorneys' fees or other costs for the collection of said note, in that event I waive all right in and to the said $100. If said note is paid in full at maturity the said $100 held by the said Stubblefield is to be paid to me. (This $100 has no reference to the $200 which I allow the said Stubblefield off of said $1,000 note.) I further certify that I am the owner and holder of said note and that same was given to me for salary indebtedness due to me by the parties to same.

             "Witness my hand and seal this 16th day of
               December, A. D. 1916.
                              "H. S. Robinson.

"In the presence of:
  "C. H. Neely.
"Agreed to:
  "T. W. Stubblefield,
    "Room 210 Colorado Building,
      "Washington, D. C."

When asked by counsel for defendant if Mr. Bracey's name was mentioned in the transaction, the witness replied: "I remember now that it was because Mr. Bracey's name was mentioned because Howie Mining Company's name was mentioned and I further remember when I left Mr. Stubblefield I told him that the $300.00 that was left sort of in escrow he was to pay to Mr. Bracey and he said he didn't know Mr. Bracey in the transaction and I would have to give Mr. Bracey an order on him for the money. I remember that now. When I was testifying the other day I didn't recall that. It has been two years ago." He further stated: "That was to go to Mr. Bracey provided the notes were paid at maturity; and the $300.00 was to stand for the expenses of a suit. *.* * I don't recall what was said about him (Mr. Bracey) further than that the money was to go to him—this $300.00 that was put up in escrow we will call it was to go to Mr. Bracey if the notes were paid at maturity. * * * I offered one of these notes first. In that note I was to take out what was coming to me and in two or three days I went back with the other note and asked Mr. Stubblefield if he would take that on the same basis, and he agreed to take that on the same basis, excepting he would only require $100.00 more for escrow we will call it, making $300.00 in all for the two notes, and I signed the second agreement. * * * That the purpose of drawing these agreements was to show where the $300.00—$200.00 in one note and $100.00 in the other note— were to be paid and why that was held out. I felt as if I was the owner of the first note. The second note I was not the owner of all of it. In a sense I was not the owner of either one. * * * I said here I was the owner of the first and I considered I was the owner because there was $750.00 due me and after deducting the discount according to Mr. Stubblefield's requirement it left only $600.00. So I felt I was justified in claiming that I owned that note." When asked if he told the plaintiff that Mr. Bracey owned the note, he replied: "I don't think there was any question that he knew that Mr.

Bracey was the owner of the notes, but the first note I claimed I had so much in it was practically my note. Mr. Stubble-field explained to me that he only bought notes in the District of Columbia as under the law he could not loan money and he could only purchase them." He was asked by counsel for the defendant what discussion between him and the plaintiff brought about the execution of the agreement, and whether when he went in the plaintiff's office the plaintiff "pulled the agreement on him the first time," and the witness replied: "No, these were written up in his office. * * * The purpose of these two agreements was the disposition of the escrow money. There was no question about that." He said he read the agreement himself, and when asked if he, witness, said any-thing about the sale of the paper when he read the agree-ment, he said: "No, that was all agreed to beforehand, every-thing was agreed to. I took it for granted that Mr. Stubble-field put that in there to meet the laws of Washington. If Mr. Stubblefield had asked me the question as to the first note whether that note belonged to me I would have said yes." When asked if a good deal was not said when he went to see Mr. Stubblefield about disposing of the notes he replied: "I don't know that there was much said. It was a business prop-osition, and he said what he would do after looking them up." This witness further testified as follows: "Q. Was any state-ment made as to the guarantors of the note being stockholders of the Bracey Company? A. Yes, sir. Q. And that there-fore they were interested in it? A. Mr. Stubblefield asked why they had signed it. Q. What did you tell him? A. I told him that they signed it because they were stockholders of the Howie Mining Company. Q. Did you tell him where you got the note? A. Yes. Q. Did you tell him who gave you the note? A. Yes. Q. Who was it? A. Mr. Bracey. Q. And you told him of the connection Mr. Bracey had with the Howie Mining Company? A. I don't remember abso-lutely telling him that, but I feel sure that I did. Mr. Stub-blefield knew Mr. Bracey's connection of course. Q. With what? A. The Howie Mining Company. Q. And with the

guarantors? A. Yes. Q. And knew where you got the note?
A. Yes. Q. And did you tell him what you got the note for?
A. For my account. Q. You took your account out, and
what were you to get the balance for? A. I don't know that
we went into all that detail. I handed him over the note and
he looked it over and asked me the questions, and finally said
what he would do. * * * I told him after the second note the
balance was to Mr. Bracey of course." On cross-examination
he testified that he did not remember telling the plaintiff that
he was not the owner of the note. When asked if he did not
hold himself out as the owner of the note as stated in the
paper signed December 13th, 1916, he replied: "That is my
signature. I don't dispute my signature, and I read it over.
Owing to the fact that so much of the note belonged to me I
felt that if that had been Mr. Stubblefield's impression I
didn't think it of importance enough to correct it." When
asked: "You treated it as your note between you and Mr.
Stubblefield?" He replied: "I didn't at that time. I wasn't
under the impression that that point made a bit of difference
whether the note was mine or wasn't mine. When that was
put in the agreement that I was the owner and holder of the
note I didn't weigh the actual importance of that at that time,
and never thinking there would be any point made on that
end of it I felt I was justified in not disputing or making
any point on that, being all the proceeds of the note came to
me outside of what Mr. Stubblefield took out of it. * * * He
(Mr. Bracey) gave me the note being he owed me the money
and I was anxious to get it and was going to make the best
deal I could with it and he gave me the second note with the
same authority and there was no question but what Mr.
Bracey understood when he asked me to get the paper dis-
counted for when I was in his employ that was partly my
business to negotiate mortgages when he handed me the
papers in the same way except that when I went to Mr. Stub-
blefield I felt that being as this note was more than mine, that
is about $150.00 more due on it, that when Mr. Stubblefield
brought the point out I didn't dispute it. I considered I was

justified in that and that is as far as I can remember the
facts." He further testified as follows: "Q. You had the
same full authority to handle the second note that you had in
the case of the first note, had you? A. Yes. Q. To make
the best bargain or the best terms you could? A. Yes. Q.
And to sell the notes for the best price you could obtain for
them? A. That word sell was not brought up, Mr. Bracey
just handed it over to me as he had lots of other papers when
I was in his employ and said go ahead and he always told me
to treat everything he gave me as though I was acting for my-
self," and in answer to a further question he said that he
"went there (to plaintiff's office) for the purpose of getting
as much money for the note as he could."

Mr. Bracey testified that the notes belonged to him, and
that he gave them to Mr. Robinson to get them discounted.

During the trial the defendant reserved two exceptions to
the evidence. The plaintiff having testified that he was the
holder of the notes, and the notes having been offered in evi-
dence, the defendant asked him on cross-examination how
much he paid Mr. Robinson for the notes, and the first excep-
tion was to the refusal of the Court below to permit the ques-
tion to be asked and answered. The precise question pre-
sented by this exception was disposed of in *Murphy* v. *Stub-
blefield,* 133 Md. 23, where we held that the cross-examina-
tion of a witness should be confined to matters brought out in
the direct examination.

The second exception is to the refusal of the Court to per-
mit the defendant to ask his witness Robinson for whom he
was "borrowing" from the plaintiff. The important question
in the case was whether the transaction between the witness
and the plaintiff was a loan of money on the notes in suit or a
sale of the notes, and the question was clearly objectionable
on the ground that it was leading. But both Mr. Robinson
and Mr. Bracey testified that the notes were given to Mr.
Robinson to have them discounted, and if the question had
been free from objection, the refusal of the Court to permit
it to be asked could not have amounted to a reversible error.

· The only other exception in the case is to the ruling of the Court on the prayers. The Court granted the plaintiff's second and sixth prayers, as follows:

"The plaintiff prays the Court to instruct the jury that there is no evidence in the case legally sufficient to support the defendant's plea of usury, and that if the jury shall find that the plaintiff acquired the notes from H. S. Robinson before the maturity thereof, in good faith and for value and without notice:

(*a*) Of any agreement between the maker of said notes or any of the endorsers or guarantors thereof or any holder of said notes and said Robinson affecting the validity of said notes, or the negotiation thereof; or

(*b*) Of any infirmity in said notes or defect in title either of said Robinson or of any prior holder of said notes, then their verdict must be for the plaintiff."

*Sixth Prayer*—"The plaintiff prays the Court to instruct the jury that if they find for the plaintiff, then their verdict shall be for the sum of $700, with interest thereon from November 24th, 1916."

There was no error in either of these instructions. The agreement under which the notes were disposed of expressly states that they were sold to the plaintiff upon the terms stated, and there is not the slightest evidence in the case to show that this contract was resorted to as a means and for the purpose of concealing an usurious loan. We said in *Murphy* v. *Stubblefield, supra,* that the burden was on the defendant to sustain the plea of usury; and where the defendant fails to meet that burden and there is no evidence legally sufficient to support the plea, the Court should not submit the question of usury to the jury. *Williams* v. *Reynolds,* 10 Md. 57. If the plaintiff purchased the notes before maturity in good faith and for value, without notice of any infirmity in the notes or defect in the title of H. S. Robinson, he was entitled to recover the $700.00, with interest from the date of the note, judgment having been previously entered for the balance of the principal and interest. Code, Art. 13, Sec. 71;

*Williams* v. *Huntington,* 68 Md. 590.   The appellant contends that the plaintiff could not be the holder of the notes in due course because to be such a holder "there must be two transactions, one between the maker and payee and the other between the payee and the plaintiff."   The obvious answer to this contention is that the notes in question were made by Fred A. Dolph, payable to his order, and were endorsed by him, and the Negotiable Instruments Act (Code, Art. 13, Sec. 27) expressly provides that a note may be made payable to the order of the maker.

The first, fourth and fifth prayers of the defendant submitted to the jury the question whether the transaction between H. S. Robinson and the plaintiff was a loan on the notes or a sale of the notes, and were properly refused because, as we have said in regard to the plaintiff's prayer, there was no evidence legally sufficient to show that the transaction was a loan by the plaintiff to Robinson, either as the owner or as the agent of the owner of the notes.

The defendant's second prayer asked the Court to instruct the jury that "where usury is charged * * * the burden of proof is upon the plaintiff to prove the *bona fides* of the transaction."   No authority is cited in support of such a rule, and we have said that the burden was on the defendant to sustain his plea of usury.

*Judgment affirmed, with costs*