## UNITED DIVERS SUPPLY CO. v. COMMERCIAL CREDIT CO.

(Circuit Court of Appeals, Fifth Circuit. June, 1923.)

No. 3946.

**1. Courts ⟊312(4)—Federal court has jurisdiction of suit on promissory notes for diversity of citizenship, where original payee could have sued.**

In an action by a Maryland corporation against a Florida corporation on promissory notes executed by aliens, payable to the order of defendant and by defendant indorsed to a Florida bank, which by an arrangement with plaintiff indorsed the notes as a matter of accommodation, *held* that, the payee defendant being entitled to sue the makers in federal court, jurisdiction was not defeated by Judicial Code, § 24 (Comp. St. § 991).

**2. Bills and notes ⟊489(7)—No variance between allegations and proof, where allegations surplusage.**

In an action by the holder against the payee and first indorser of promissory notes, where the indorsement of a bank was made as a loan of credit and a mere accommodation, and was therefore a nullity, there was no variance between a declaration alleging that the notes were indorsed in blank by such bank and proof of special indorsements; such allegation being surplusage.

**3. Usury ⟊2(2)—Usurious contract governed by law of state where made and to be performed, notwithstanding express provisions of contract to the contrary.**

Where a contract between plaintiff, a credit company, and defendant supply company for the loan of money on the security of promissory notes payable to the supply company was made in Maryland and was to be there performed, it was governed by the laws of Maryland, and neither the usury laws of Delaware or Florida were applicable, though the contract provided the laws of Delaware should govern, and though the place of defendant's residence and business was Florida.

**4. Evidence ⟊29—United States court takes judicial notice of state laws.**

United States courts are required to take judicial notice of the laws of a state which govern a contract in litigation.

**5. Usury ⟊2(1)—Maryland usury statute applicable wherever Maryland contract involved.**

The provisions of 4 Code Pub. Gen. Laws Md. art. 23, § 100A, providing that no corporation shall interpose the defense of usury in any action at law or in equity, repealed the usury statutes as to corporations, and established a rule of substantive law applicable in whatever jurisdiction suit is brought on a contract to which the laws of Maryland are applicable.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action at law by the Commercial Credit Company against the United Divers Supply Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Kenneth I. McKay, of Tampa, Fla. (McKay & Withers, of Tampa, Fla., on the brief), for plaintiff in error.

N. B. K. Pettingill, of Tampa, Fla. (M. B. MacFarlane and R. E. L. Chancey, both of Tampa, Fla., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

⟊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRYAN, Circuit Judge. This is a writ of error, sued out by the United Divers Supply Company, defendant, to a judgment in favor of the Commercial Credit Company, plaintiff. The suit was brought against the defendant as indorser upon 12 promissory notes, aggregating approximately $29,000, made payable to defendant's order at the Sponge Exchange Bank, at Tarpon Springs, Fla. The notes provide for the payment of all costs of collection, including a reasonable attorney's fee if it should become necessary to collect through an attorney, and are indorsed as follows:

"United Divers Supply Co.,
    "By E. Macronaris.
"Pay to Commercial Credit Co., Baltimore.
                    "Sponge Exchange Bank, A. M. Lowe, Pres."

One of the notes bears interest at 8 per cent. per annum, and all of the others at 10 per cent. per annum. The maker of each note was a subject of Greece residing at Tarpon Springs, engaged in sponge fishing in the Gulf of Mexico. The notes were executed in June and July, 1917, payable four months after date.

The plaintiff is a Delaware corporation, with its principal office and headquarters at Baltimore, while the defendant and the Sponge Exchange Bank are Florida corporations, engaged in business at Tarpon Springs. The declaration alleges that before maturity the Sponge Exchange Bank indorsed the notes in blank, and thereafter the plaintiff purchased them and became the owner thereof in good faith, for value, and before maturity.

The defendant submitted a motion to strike this allegation, and also demurred to the declaration, upon the principal ground that the court was without jurisdiction, because there was no diversity of citizenship between the defendant and the bank. The motion and the demurrer were overruled, and the defendant interposed a plea of usury, which alleges that the plaintiff collected and received from the defendant interest at a rate exceeding 16 per cent. per annum, and exceeding $9,000 in amount, upon money loaned and advanced in pursuance of the terms of a contract between the parties, dated June 10, 1916, and that under the laws of Florida the defendant is entitled to recover from the plaintiff double the amount of interest so collected, together with a reasonable amount as attorney's fee, which amounts the defendant offers to set off against plaintiff's claim.

The contract was in evidence, and according to its terms the plaintiff agreed to buy such of defendant's accounts receivable as should be acceptable to it, and to pay the face value thereof, less a charge equal to the legal rate of interest on the money outstanding thereon, of which 77 per cent. should be paid upon acceptance, and the remaining 23 per cent. upon the payment of the accounts to the plaintiff. The plaintiff agreed to allow the defendant to retain the accounts and collect them; to place its credit department at defendant's disposal; to have its auditor give instructions to the defendant as to the best method of keeping its books, records, and accounts; to permit the defendant to submit any of its sales contracts to plaintiff's attorneys for their advice and opinion; to supply proper forms for assignments

of accounts; and to assist in their prompt collection. The defend-' ant guaranteed the accounts, agreed to collect them, and to transmit the proceeds as and when received to the plaintiff at Baltimore. Plaintiff's compensation was fixed at one-thirtieth of 1 per cent. of the net face value of the accounts for each day from date of purchase until date of payment. Finally, it was agreed that all provisions of the contract should be construed in accordance with the laws of Delaware.

Before the contract was entered into, the Supply Company furnished necessary supplies to the owners and operators of boats engaged in sponge fishing in the Gulf of Mexico, and accepted their notes, but collected the amounts due it whenever the boats returned and their catches of sponges were sold. It applied to the Credit Company at Baltimore for advances to finance the fishing operations. The contract between the parties was the result of that application. It was executed by the Credit Company at Baltimore, and was mailed to the Sponge Exchange Bank at Tarpon Springs, where it was executed by the Supply Company. Thereafter the Supply Company deposited the notes, which it accepted from the fishermen, with the Sponge Exchange Bank, and received immediate credit for 77 per cent. of the proceeds. The bank, under an arrangement with the Credit Company, forwarded the notes to it at Baltimore, and made drafts upon it for the amounts so advanced, which were paid in New York. The method of doing business with the fishermen after the contract was entered into remained unchanged. The Supply Company collected from them the amounts represented by the notes and accounts, without regard to whether it had the notes in its possession. The notes transferred by the Supply Company to the Credit Company amounted to approximately $150,000. The average amount of the notes usually held by the Credit Company ranged from $30,000 to $40,000. Finally, the Credit Company declined to make further advances. At that time, the Supply Company had collected the amounts represented by all but two of the notes in suit from the original makers, and had paid in full all notes held by the Credit Company, together with interest thereon at the contract rate, except the notes involved in this suit.

The court ruled out as immaterial a contract between the Sponge Exchange Bank and the Credit Company, which by its terms provided the Credit Company would purchase the notes of the Supply Company held by the bank upon the same terms as those provided in the contract between the parties to this suit; held that the contract was governed by the laws of Maryland; and, at the close of the evidence, instructed the jury to find a verdict for the plaintiff, after deducting a credit of 23 per cent. on certain other notes, for 77 per cent. of the face value of the notes sued on, together with the interest called for therein, and an attorney's fee.

[1] The defendant relies upon section 24 of the Judicial Code (Comp. St. § 991) to defeat jurisdiction. But it was payee of notes executed by aliens, and could itself have sued upon the notes in the court below. Moreover, the suit is not against the makers, but is against the defendant upon its indorsements in blank. The defend-

ant, by such indorsements, became obligated to the holder of the notes, title to which thereafter passed by mere delivery. We are of opinion, therefore, that the objection to jurisdiction is not well taken. Emsheimer v. New Orleans, 186 U. S. 33, 22 Sup. Ct. 770, 46 L. Ed. 1042; Independent School District v. Hall, 113 U. S. 135, 5 Sup. Ct. 371, 28 L. Ed. 954; Jones v. Shapera, 57 Fed. 457, 6 C. C. A. 423.

[2] It is contended that a variance exists, inasmuch as the declaration alleges that the notes were indorsed in blank by the Sponge Exchange Bank, whereas the proof shows special indorsements. The allegation was surplusage, and the bank's indorsement was a nullity. Sponge Exchange Bank v. Commercial Credit Co. (C. C. A.) 263 Fed. 20.

The contract relied on by the defendant to sustain its plea of usury was not, as we think, a Delaware contract, as contended by the plaintiff. The laws of Delaware, under which the defense of usury is not available to a corporation (Delaware Code, § 2621, as amended in 1915 [28 Del. Laws, c. 213]), have no real or vital relation to the transactions between the parties. The elaborate provisions for plaintiff's assistance in and superintendence of the conduct of defendant's business never were put into operation, so far as the record discloses, and were doubtless incorporated for the purpose of evading usury laws.

[3, 4] Neither can the usury laws of Florida, which forfeit all interest in usurious contracts, be made applicable. The contract was entered into and was to be performed in Maryland, and we therefore agree with the District Court that it was a Maryland contract. De Wolf v. Johnson, 10 Wheat. 367, 6 L. Ed. 343. We are required to take judicial notice of the laws of Maryland, as was the District Court in the trial before it. Lamar v. Micou, 114 U. S. 218, 5 Sup. Ct. 857, 29 L. Ed. 94; Fourth National Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825; Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293.

[5] The laws of that State prohibit interest in excess of 6 per cent. per annum, and, prior to June 1, 1916, authorized pleas of usury to prevent recovery of interest above that rate. Bandel v. Isaac, 13 Md. 202; Scott v. Leary, 34 Md. 389; Murphy v. Stubblefield, 133 Md. 23, 104 Atl. 259. But an amendment to the corporation laws of Maryland, which became effective June 1, 1916, provides:

"No corporation shall hereafter interpose the defense of usury in any action at law or in equity." 4 Code Md. art. 23, § 100a.

A statute substantially identical was enacted in New York in 1850, and has been repeatedly construed by the courts of that state as repealing usury statutes as to corporations. Rosa v. Butterfield, 33 N. Y. 665. Similar statutes in other states have been held to effect the remedy only. 5 R. C. L. 982. In Junction R. R. Co. v. Bank of Ashland, 12 Wall. 226, 20 L. Ed. 385, it is held that the New York statute lays down a rule of substantive law, and as such is applicable in whatever jurisdiction suit is brought.

In accordance with this view of the Supreme Court, the judgment is affirmed.