## SPENCER, et al v. CITY NATIONAL BANK OF MIAMI, et al.

No. 74-25348(11).

Circuit Court, Dade County.

September 18, 1975.

Snyder, Young, Stern, Barrett & Tannenbaum, North Miami Beach, for the plaintiffs.

Fowler, White, Burnett, Hurley, Banick & Knight, Miami, for the defendant City National Bank of Miami.

Lapidus & Hollander and Friedman, Britton & Stettin, all of Miami, for Sailboat Key, Inc., Burton Goldberg, et al.

Swann & Glass, Coral Gables, for Continental Mortgage Investors.

MILTON A. FRIEDMAN, Circuit Judge.

*Final judgment:* John C. Spencer, Virginia O. Beverly and William A. Van Nordick, Jr., as trustees for Fidelity Mortgage Investors, Cabot, Cabot and Forbes, a land trust, and Hospital Mortgage Group filed suit to foreclose their first mortgage upon Sailboat Key, an island located in Biscayne Bay, connected to the mainland by a causeway. Sailboat Key, Inc., the owner of the land was joined as defendant as was Continental Mortgage Investors, holders of a subordinated mortgage. Continental, claiming an outstanding balance on its mortgage of $550,000, claiming priority, sought foreclosure against Sailboat Key, Inc. It was to this crossclaim for foreclosure that Sailboat Key, Inc. replied and raised its claim of usury.

Full discovery was afforded all parties. By order of this court, final hearing as to all matters was set for June 3, 1975. Plaintiffs appeared and proved their case. At the conclusion of the plaintiffs' case, Continental Mortgage Investors moved for a severance of the crossclaim and for a continuance. They waived their mortgage lien, but not their claim on the mortgage note. Motion was granted and the crossclaim was re-set for trial June 13, 1975.

On June 12, 1975, finding that preliminary issues of an accounting nature required determination, this court referred that portion of the case to Sydney Lefcourt, as special master of this court, and continued the final hearing. The formal order of reference was entered nunc pro tunc on July 16, 1975. The original reference was agreed to by Continental's attorneys when they appeared before this court on the morning of June 12, 1975, and by letter to this court, hand delivered late in the afternoon of June 12, 1975.

On June 13, 1975, the issues of computation of interest were tried before the special master. On July 14, 1975, the special master's report was filed finding interest on the loan exceeded 15%. On July 25, 1975, Continental filed its exceptions to special master's report, objecting for the first time to the original reference.

Final hearing of the crossclaim and Continental's exceptions to report of special master was set for August 1, 1975.

Sailboat Key Inc., claimed that Continental Mortgage Investors had exacted over 25% interest for a loan in the principal amount $2,225,318.84, that in return for lending that amount Continental received from it in interest, discount, bonus and kickers, the sum of $660,962.03, plus $550,000 that Continental asserts is still owing on the mortgage note. The principal of the loan was completely repaid in less than two years. The average outstanding balance was $1,723,011.01. These numbers were never in dispute. Nor, considering the discount, bonus and kickers as interest, is the basic arithmetical computation that Continental received interest on this loan of 37.40% per year. Continental's defense consisted of the claim that the transaction was governed by Massachusetts law, that Florida has no usury law governing transactions exceeding $500,000, and that this action was barred by the Florida statute of limitations.

### Findings of fact and conclusions of law

In January, 1970, Continental Mortgage Investors entered into a loan agreement with Sailboat Key, Inc. The term of the loan was two years, the maximum amount to be disbursed $3,350,000. Interest was 14% per year. A 2% discount was taken on the face amount of the note would never be disbursed. Continental's records, made at the time they entered into the loan transaction, showed

that they contemplated that the loan would yield 17% interest per year. Their records, after disbursal, showed it had yielded 16.47% interest.

In addition to this yield, in itself an exaction of usurious interest under Florida law, the loan agreement provided —

> "As additional consideration for making this loan C. M. I. shall receive a fifty (50%) percent interest in the project, to be evidenced by that percentage of stock of the borrowing corporation or in such other form as the borrower and C. M. I. shall agree upon . . ."

Pursuant to this provision, 50% of the borrower was conveyed to Continental Mortgage Investors. The testimony as to the value of this interest was unopposed. Continental put on no testimony, nor introduced any evidence which contradicted Sailboat Key's valuation. Continental's records supported the valuation. It was agreed upon between the parties that the equity in the project at the time Continental exacted its 50% was $1,975,000. Continental's bonus for making this loan was $987,500 when they took it. This is interest under the applicable statute.

Continental's loan did not provide funds for actual construction of the project. They had the right, but not the obligation to make such a loan, nor did the value of their interest depend on the success of the project. In the early summer of 1971, they declined to do so. They then sent a default notice and hired an attorney to foreclose on the island. They refused to cooperate with any attempts to refinance. They offered to purchase the balance of the project for $750,000. Their actions in these respects can only be characterized as economic blackmail.

Finally they agreed to a repayment of principal, payment of all the interest plus an additional $750,000. During the course of these negotiations, their officers did not disagree that the loan was usurious, but insisted that this was the price. It was paid. Continental received $2,225,318.84 as repayment of principal, $460,926.02 as payment of interest and discount, $10,000 for their "equity interest", $190,000 by their documentation for waiving the right to make the construction loan, and a note with a balance of $550,000. Continental then satisfied their mortgage and reconveyed half of the project back to the borrower.

This court finds that the 2% discount was charged and collected. This court finds that the $10,000 payment, the $190,000 payment and the $550,000 note were additional interest on this loan. This court finds that interest in excess of 25% was exacted by Continental Mortgage Investors.

## MASSACHUSETTS LAW

Continental claims that this was a Massachusetts transaction and that Massachusetts law should apply. Massachusetts has no usury statute applicable.

The testimony, unopposed, reflects that the loan was to a Florida borrower upon security of Florida real estate. The loan was negotiated in Florida. The loan documents were prepared in Florida by the advisor to the trust which approved all loans. The advisor was located in Florida and was headed by a Florida lawyer. The money was disbursed to the borrower in Florida. The only connection with Massachusetts was that the borrower, its attorney and Continental's officer who handled the transaction took all of the loan documents which had been prepared in Florida, got on a plane at Miami International Airport and flew to Logan Airport in Boston, Massachusetts. There they got off the plane, went to the offices of Continental Mortgage Investors, signed the documents, took the documents with them, got back on the plane and flew back to Miami. The documents provided that Massachusetts law should apply.

Such a provision, as here contained, will be given effect unless its purpose is to evade the usury laws of the forum, or the state whose law is chosen has no real contact with the transaction. United Divers Supply Co. v. Commercial Credit Co., C. C. A., Fifth Cir., 289 F. 316, Continental Mortgage Investors v. Village by the Sea, Inc., Fla. App., 252 So. 2d 833.

This court finds that Massachusetts had no real connection with this transaction. The only purpose of the provision in the documents selecting Massachusetts law was to evade Florida's usury laws. The only purpose for the plane trip was to add legitimacy to Continental's blatant exaction of usurious interest. The choice of law was itself a scheme, device or contrivance to exact greater interest than Florida's law allows.

This court will not countenance such action. Florida's law here applies.

### STATUTE OF LIMITATIONS

Finally Continental argues that the statute of limitations of Florida bars the action. The original principal indebtedness was repaid on November 5, 1971. The last payment of interest, however, was not due until 1976. This suit was filed in December of 1974. §95.11 (6), F. S., provides a two year statute of limitations. However, the statute did not begin to run until the last installment became due and payable. General Capital Corporation v. Tel Service Co., Inc., Fla. App., 212 So. 2d 369. It does not run from the time

when the usurious charges were exacted, but from the time when the last payment is made. Wenk v. Insurance Agents Finance Corporation, Fla. App., 99 So. 2d 883. It is always available as a counterclaim if any portion of the original obligation remains outstanding. Beekner v. L. P. Kaufman, Inc., Fla., 198 So. 794.

Here, the last payment of interest was not due until 1976. This action began as a counterclaim to Continental's suit on the last remaining portion of its obligation. The day before the final hearing, Continental notified Sailboat Key, Inc., that it was adding to the balance still owed on the loan, the fees it had paid its attorney for defending the usury suit. The statute had not run. The statute had not begun to run. The action is not barred by the statute of limitations.

### RECAPITULATION

To recapitulate, the interest charged was $393.962.03. The discount was $67,000. Payment of an additional $200,000 was exacted as against the $750,000 note with a balance still due of $550,000 on the note.

It is the holding of this court that the interest charged, the equity position, the discount and the $200,000 payment aforementioned constitute usury, and Continental Mortgage Investors received in excess of 25% on their loan. The remedy provided is a return of double the interest actually paid.

It is, therefore, ordered and adjudged as follows —

1. That the exceptions to the special master's report filed by Continental Mortgage Investors are overruled.

2. That Sailboat Key, Inc., a Florida corporation, have and recover a judgment against Continental Mortgage Investors, a Massachusetts business trust, in the amount of $1,321,924.06, plus costs as may hereinafter be taxed, for which sum let execution issue. Further, that the Continental Mortgage Investors may not recover the $550,000 remainder on the note as aforementioned.

\*       \*       \*

Sailboat Key, Inc., Burton Goldberg, et al, filed the following —

### ANSWER TO CROSSCLAIM OF CONTINENTAL MORTGAGE INVESTORS

COME NOW the Defendants, Sailboat Key, Inc., Burton Goldberg, Sailboat Key Condominium Association, Club On Sailboat Key, Inc., and Sailboat Key Management, Inc., by and through their undersigned

attorneys, and file this, their Answer to the Counterclaim and Crossclaim of Continental Mortgage Investors, and deny each and every allegation contained therein and demand strict proof thereof.

As and for further affirmatives defenses to the Counterclaim and Crossclaim, these Defendants allege as follows:

1. That the said Note and Mortgage referred to in the Crossclaim and Counterclaim of Continental Mortgage Investors are usurious in that Continental Mortgage Investors willfully, knowingly, and with a corrupt intent, took and received an amount of interest in excess of fifteen (15%) percent, which sum is in violation of the usury statutes of the State of Florida.

2. That the said Note and Mortgage referred to in the Crossclaim and Counterclaim of Continental Mortgage Investors are usurious in that Continental Mortgage Investors willfully, knowingly, and with a corrupt intent, took and received an amount of interest in excess of twenty-five (25%) percent, which sum is in violation of the usury statute of the State of Florida.

3. By virtue of the allegations referred to above, the Note and Mortgage of Continental Mortgage Investors are unenforceable against these Defendants and against the property in foreclosure.

## CROSSCLAIM and COUNTERCLAIM

COME NOW Sailboat Key, Inc. and Burton Goldberg, by and through their undersigned attorneys, and file this, their Crossclaim and Counterclaim against the Defendant, Continental Mortgage Investors, a Massachusetts business trust, and say:

1. The Plaintiff, Burton Goldberg, is a resident of Dade County, Florida, and is sui juris.

2. The Plaintiff, Sailboat Key, Inc., is a Florida corporation with its principal place of business in Dade County, Florida.

3. The Defendant, Continental Mortgage Investors, is a business trust authorized to and transacting business in Dade County, Florida.

4. That on January 22, 1970, the Plaintiffs, Sailboat Key, Inc. and Burton Goldberg borrowed from the Defendant, Continental Mortgage Investors, the sum of $3,350,000.00 and as security for the payment of said sum gave a mortgage upon the real property which is the subject matter of this foreclosure to the Defendant, Continental Mortgage Investors. A copy of said Loan Agreement dated January 22, 1970 is attached to the Counterclaim and Crossclaim as Exhibit "5". Thereafter, as indicated in Amended Exhibit "E" to Exhibit "5" mentioned above

attached to the Counterclaim and Crossclaim of Continental Mortgage Investors by agreement dated September 28, 1970, the Plaintiffs, Sailboat Key, Inc. and Burton Goldberg as "a condition of Lender's performance hereunder that the Borrower by and through its officers, directors and shareholders will cause to be issued to Lender Fifty (50%) percent of the outstanding capital stock of the borrowing corporation, and that the percentage of stock of the borrowing corporation shall be issued in such form as the Borrower and Continental Mortgage Investors shall agree upon".

5. The taking of Fifty (50%) percent of the outstanding capital stock of Sailboat Key, Inc. as a condition to the loan itself constituted an unlawful and illegal taking of additional compensation as a condition for the making of the loan, and further that as a result of said actions Defendant, Continental Mortgage Investors, acquired Fifty (50%) percent of the capital stock of Plaintiff, Sailboat Key, Inc. Said agreement when made was with the willful and corrupt intent on the part of the Defendant, Continental Mortgage Investors, to take and extract a sum in excess of the maximum legal rate of interest from the Plaintiffs, Sailboat Key, Inc. and Burton Goldberg, and as such was prohibited by law.

6. Thereafter, Continental Mortgage Investors re-conveyed its 50% stock interest in the Plaintiff, Sailboat Key, Inc. and Burton Goldberg, in return for a consideration of $740,000.00, secured by a promissory note in said sum and the mortgage which Continental Mortgage Investors now seeks to foreclose.

7. Said note and mortgage are void as having been obtained through usury and may not be enforced against these Plaintiffs.

WHEREFORE, Plaintiffs, Sailboat Key, Inc. and Burton Goldberg, pray this Court will determine that the note and mortgage delivered to Continental Mortgage Investors were tainted and infected with usury and may not be enforced against these Plaintiffs. Plaintiffs further pray the Court will determine the amount of monies already paid by the Plaintiffs to Continental Mortgage Investors under the terms of said note and mortgage and will order the principal sum so paid re-paid and will further order any sums paid as interest by the Plaintiffs to Continental Mortgage Investors to be re-paid in double the amounts paid, all as provided by the Florida Statutes.

FRIEDMAN, BRITTON & STETTIN

Attorneys for Defendants

By *Herbert Stettin*

Continental Mortgage Investors filed the following —

### AMENDED ANSWER TO CROSSCLAIM

Continental Mortgage Investors for Amended Answer to the Cross-claim and Counterclaim of Defendants Sailboat Key, Inc. and Burton Goldberg alleges that:

1. Paragraphs 1 and 2 of the aforesaid Crossclaim and Counterclaim are admitted.

2. With respect to the allegations of Paragraph 3 of the Crossclaim and Counterclaim, the Defendant Continental Mortgage Investors admits that it is a Massachusetts Business Trust formed and organized pursuant to the laws of Massachusetts but denies each and every additional allegation of this said Paragraph.

3. With respect to paragraph 4, Cross-Defendant denies Burton Goldberg borrowed money from Continental Mortgage Investors and denies the quoted provision with respect to issuance of stock was by agreement dated September 28, 1970.

4. That paragraphs 5, 6 and 7 of the aforesaid Crossclaim and Counterclaim are denied.

### AMENDED AFFIRMATIVE DEFENSES

Continental Mortgage Investors for Amended Affirmative Defenses to the Crossclaim and Counterclaim of Sailboat Key, Inc. and Burton Goldberg alleges that:

1. The Note and Mortgage referred to in the Crossclaim and Counterclaim of Continental Mortgage Investors are governed by the laws of the State of Massachusetts and under the laws of the State of Massachusetts, said Note and Mortgage are not usurious.

2. In the Modification of Loan Agreement dated October 22, 1971 and attached to Continental Mortgage Investors' Crossclaim and Counterclaim and by reference made a part thereof as Exhibit "B" and under Rule 1.130(b), Florida Rules of Civil Procedure, made by reference a part hereof, Defendants Sailboat Key, Inc. and Burton Goldberg released Continental Mortgage Investors from any and all claims, defenses or liability in respect to the transaction which is the subject of this cause.

3. The outstanding capital stock of Sailboat Key, Inc. is property, the value of which substantially depends on the success of the venture within the meaning of Section 687.03, Florida Statutes, as amended; therefore, even assuming, *pro arguendo,* that Continental Mortgage Investors reconveyed its stock in Sailboat Key, Inc. for the Note and Mortgage in the amount of $740,000 (which is specifically denied herein), the

receipt of the Note and Mortgage for said stock was substantially dependent upon the success of the venture within the meaning of Section 687.03, Florida Statutes, as amended and said Note and Mortgage are not included in the computation of interest under Chapter 687, Florida Statutes.

4. To the extent that the Crossclaim and Counterclaim referred to the original loan transaction with Continental Mortgage Investors, the transaction constitutes an accord and satisfaction between the parties and therefore is barred.

5. The claim is barred by the Statute of Limitations.

6. The Defendants Sailboat Key, Inc. and Burton Goldberg are, as a matter of law, estopped to raise the defense of usury in that the Defendants, as in their present capacity as beneficiaries of the City National Bank of Miami Trust, acquired ownership interest subsequent to the making of the loan and conveyance of mortgage creating a lien upon the property.

SWANN & GLASS
Attorneys for Continental
Mortgage Investors
By *Thomas G. Schultz*

## Sailboat Key, Inc. and Burton Goldberg filed the following —

### REPLY TO AMENDED AFFIRMATIVE DEFENSES

COME NOW Sailboat Key, Inc. and Burton Goldberg, and in reply to the Amended Affirmative Defenses raised in the Amended Answer to Crossclaim of Continental Mortgage Investors, state as follows:

1. They deny that the note and mortgage are governed by the laws of the State of Massachusetts and deny that under the laws of the State of Massachusetts the note and mortgage are not usurious. They affirmatively aver that the attempt to apply the law of the State of Massachusetts is a scheme, artifice or device to evade the usury laws of the State of Florida.

2. The release referred to in Paragraph 2 of the Affirmative Defenses is not a release of usury. Continental Mortgage Investors did not purge themselves or the usury they committed at the time they obtained the release, if it is a release. In fact, at the time they obtained the "release" they exacted usurious interest of $750,000.00. Said exaction of the usurious interest was contemporaneous with the obtaining of the so-called release.

3. These cross-claimants specifically aver that the value of the stock as alleged in Paragraph 3 was not substantially dependent upon the success of the venture within the meaning of Section 687.03 F. S., F. S.A. These

parties specifically aver that the amendment to Section 687.03 F. S., F. S. A. to which the affirmative defenses rely, became part of the laws of the State of Florida effective 1974. At that time, the stock had been converted to a note and mortgage and said transaction was not affected by the passage of the amendment. These parties also specifically aver that Section 687.03 (3), which was enacted by the legislature in 1974 as House Bill No. 3955, is unconstitutional as violating Article 3, Section 6, of the Constitution of the State of Florida, to-wit:

> "Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title. No law shall be revised or amended by reference to its title only..."

The title of said act is fatally defective.

4. There is no accord and satisfaction nor has there been any purging of usury from this transaction.

5. These parties deny that the claim is barred by the Statute of Limitations.

6. These parties deny that they were estopped and, in fact, aver that estoppel is no defense to a claim of usury.

LAPIDUS & HOLLANDER
Attorneys for Sailboat Key, Inc. and Burton Goldberg
By *Richard L. Lapidus*