# WILLIAM PENROSE *vs.* CANTON NATIONAL BANK.

*Loan by National Bank—Usury—Indorser on Corporation Note—Parol Agreement—Evidence—Instructions.*

Where an indorsement is required by a bank upon the renewal of a note, there is a consideration for the indorsement, although the indorsement by the same person on the original note lacked a consideration.     p. 204

An indorser on a note cannot show, in defense to an action on his indorsement, a verbal agreement that he should not be held personally liable on the indorsement, since the purpose of such testimony is to destroy and nullify the written agreement.     pp. 204, 205

Where a bank, in discounting notes at the rate of six per cent., also required the borrowers to maintain a balance on deposit or to discount notes in addition to those for money actually loaned, and then to pay these additional notes at once by checks, thus collecting extra interest to the amount of four per cent. on the *total* of the amounts loaned for the periods specified, such additional charge was usurious.     p. 205

Under U. S. Rev. St., secs. 5197, 5198, providing that a national bank may charge the rate of interest fixed by the state law, and seven per cent. if no rate is so fixed, and that a charge of a greater rate shall involve a forfeiture of all interest not paid, or the recovery of twice the amount of interest by the person who paid it, an indorser on a note given to such bank, who did not pay excessive interest, though he cannot recover the penalty, may, in a suit on his indorsement, have the benefit of the provision for the forfeiture of interest not paid. pp. 206, 207

Code, art. 49, sec. 5, requiring a plea of usury to state the sum of money lent or advanced, with the time at which it was lent or advanced, does not require the plea to give the details of renewal notes actually sued on, in addition to the details of the original loans.     p. 206

Code, art. 23, sec. 100A, providing that no corporation shall interpose the defense of usury, precludes an indorser, even one for accommodation, upon a note given by a corporation, from asserting that defense.                         p. 207

Under Code, art. 23, sec. 100A, providing that no corporation shall interpose the defense of usury, national banks are free, as to corporations in this State, to charge any rates of interest that may be agreed on, U. S. Rev. St., secs. 5197, 5198, in regard to the rates of interest to be charged by national banks, not being intended to place such banks in a position of inequality with state institutions for dealing in loans.     pp. 208, 209

It was proper to exclude questions on cross-examination by which it was sought to introduce new matter in support of affirmative defenses.                         p. 209

The allowance of a question asked a witness, seeking an admission of knowledge on his part, was harmless, when he denied such knowledge in his answer.                         p. 209

Questions asked of defendant on cross-examination, seeking acknowledgment by him that he had admitted liability on the claim in suit, were proper.                         p. 210

In an action against the indorser of a note given by a corporation to a bank, the exclusion of an assignment of a claim by the corporation against a defaulting officer, which the bank refused to accept as collateral, was proper, the defaulting officer being in any case liable] on the loan by reason of his indorsement of the note, and the assignment of the claim against him adding nothing.                         p. 210

In an action by a bank for money loaned, questions asked of its cashier, seeking acknowledgments by him, that the interest charges were usurious and illegal, were properly excluded in the court's discretion, the questions in part calling for answers as to the law, and seeking, not to bring out facts, but to have the witness characterize the transaction according to his conception of it.                         p. 210

In an action by a bank on a note given for money loaned, the exclusion of a question to the bank's cashier as to a possible method of obtaining additional interest from a borrower, which was not the method adopted in connection with the note in suit, *held* not improper.                         p. 211

In an action against an indorser on a note, the parol defense . of an agreement that he should not be personally liable on the indorsement, but that the collateral only should be looked to for payment of the note, being inadmissible, it was proper to exclude questions as to defendant's handling of the collateral, this being irrelevant.                                    p. 211

In an action against an indorser on a note, in which he asserted by way of defense that it was agreed that he should not be held personally liable on the indorsement, evidence of his failure to assert such agreement in discussions in which a declaration as to such an agreement might be thought natural, if his contention had any foundation, was properly admitted.
p. 211

In an action by a bank against the indorser of a note, where the latter asserted by way of defense that the bank's cashier had agreed that he should not be personally liable on the note, the president of the bank was properly asked whether he had been informed of such alleged agreement, defendant being one of the directors of the bank and its counsel, and consequently his failure to make known to his associates such an unusual agreement having possibly some weight with the jury.   p. 212

Testimony by an officer of a title company as to the title to certain property was not inadmissible as hearsay because the witness had examined the land records with two. men who assisted in the detailed abstracts.                          p. 213

It was proper to exclude questions asked defendant, calling for a repetition, on rebuttal, of statements made by him in his previous testimony.                                          p. 213

In an action against an accommodation indorser, it was proper to refuse prayers directing the jury to find for defendant if his indorsement was without consideration, since such an indorser always indorses without consideration.        p. 213

U. S. Rev. St., secs. 5197, 5198, in reference to interest to be charged by national banks, and the effect of an excessive charge, does not entitle an indorser, who did not pay the excessive interest, to recover or have credited to him the amount paid.
p. 214

*Decided January 21st, 1925.*

Appeal from the Superior Court of Baltimore City (STUMP, J.)..

. Action by the Canton National Bank of Canton against William Penrose. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Edwin T. Dickerson,* with whom were *M. N. Packard* and *Lindsay C. Spencer* on the brief, for the appellant.

*Watson E. Sherwood* and *Edward Duffy,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

This appeal is from a judgment on a verdict of a jury against the appellant for the amount of principal and interest on two promissory notes which he had indorsed. On one the maker was the Springdale Building and Savings Association, of which the appellant was president; and the other had as maker H. Walter Ganster, a director and attorney for the association. The latter note was secured, according to the testimony of Ganster, by a note of the association held as collateral. Both loans were for the association. Each of the notes sued on was the last of a series of renewed notes. The defenses urged were want of consideration, a collateral agreement that the bank should be paid from other securities, and that this indorser should not be liable on his indorsement, and usury. The defense of want of consideration at the time of indorsing is based upon the fact that the indorsements were for accommodation only, and that they were made after the notes had been discounted. The testimony agrees that both notes were indorsed for accommodation of the makers. The original association note was indorsed by the defendant shortly after it came into the hands of the bank, but whether the indorsement was in pursuance of a previous understand-

ing and arrangement is disputed.   See authorities collected
in 44 L. R. A. (N. S.), 485 and L. R. A. 1918 E. 580.

The original Ganster note seems not to have been indorsed
at all by the defendant.   It is undisputed, however, that the
indorsements were required by the bank upon the renewals
of both notes, and the defendant himself arranged the re-
newals with his name on the paper.   Therefore, even if con-
sideration might have been found lacking to the original in-
dorsements, the indorsements on the renewal notes would
seem to have been free from that defect.   *Nalitzky v. Wil-
liams,* 237 Fed. 802.

The contention of a collateral agreement is based on testi-
mony by the defendant that, upon his hesitating to indorse
the notes for fear of having to pay at maturity, the cashier
of the bank said, "Mr. Penrose, that is a condition that
could not arise, because there is collateral here, and we would
·give you all the time you could possibly want to liquidate the
collateral, and it would not be * * * there would be no pres-
sure brought upon you to make payment except out of col-
lateral."   And, according to this testimony, the cashier re-
peated, upon the renewals of the notes, his assurances that
the defendant would never be pressed to pay the money per-
sonally.   The substance of it was, says the appellant, that he
was to be only morally, and not legally, liable.   The only
other testimony of conversation on this subject to be consid-
ered, on behalf of the appellant was that of a witness, Mulli-
gan, produced by him; but his testimony retails only a con-
versation had a week before suit was brought, and shows no
stipulations of any sort.   It is stated in the record and by
counsel in the briefs, that objection was made to the admis-
sion of testimony offered to prove the collateral agreement,
and that it was received subject to exception, but the record
does not contain the formal notes of the objections and rul-
ings for the appellee.   The testimony was not admissible, for
its purpose was to destroy and nullify the written agreement.
Of a similar defense the Supreme Court of Pennsylvania in
a recent case (*First Nat. Bank v. Lawall,* 280 Pa. 407),

said: "He does not insist there was any fraud, accident or mistake in its execution, that it was improperly used, or a condition annexed or any fund in the hands of the holder applicable to its payment, but only that he was not to be held liable, since the collateral was believed to be sufficient at the time of signing. The effect of the evidence proposed in substantiation of the defense would not be to vary the written instrument, but nullify and destroy it, assuming that the facts alleged can be shown—and this is not permissible." *McSherry v. Brooks*, 46 Md. 103, 118; *Black v. Bank of Westminster*, 96 Md. 399, 416.

In the evidence to support the pleas of usury there is no dispute of importance in the case. Witnesses on both sides testified in general terms that the borrowers were required to maintain a balance on deposit or to discount notes in addition to those for money actually loaned, and then to pay the additional notes at once by checks; and this testimony might be sufficient to support a finding that such "balance" notes were taken on account of the two loans. The record of the bank when produced, however, showed only four balance notes taken, and all these taken against the Springdale Association loan; and counsel for both parties have argued the case on the assumption that the balance notes were so taken on account of the association loan only. We feel constrained to accept this interpretation and take this to be the case presented for our consideration. In view of the fact that both loans were in reality made to the association, this treatment of the balance notes is understandable. Three of the notes shown by the record were for $5,000 each, for four months periods, and the last was for $10,000 for five months. The total of extra interest collected in this way was $566.18, or over four per cent. on the total of the amounts loaned for the periods specified. And as the notes for the actual loans were discounted at six per cent., the additional charge was usurious under the law of this State to the extent that it applies. *East River Bank v. Hoyt*, 32 N. Y. 119; *Bank v. Wysong & Miles Co.*, 177 N. C. 380, and note 12 A. L. R. 1422.

The federal law which governs interest chargeable by national banks (sections 5197 and 5198, U. S. Rev. Stat.) provides that a bank may charge the rate of interest fixed by the laws of the State where the bank is located, and that where those laws fix no rate, then to charge seven per cent. The charge of a greater rate of interest is, by the terms of the statute, made to involve forfeiture of all interest not paid, or the recovery of twice the amount of interest paid by the person who paid it or by his legal representatives. And in a suit against an indorser the defendant may by virtue of this provision be relieved of all interest up to the time of suit, when excessive interest has been charged for the loan, either originally or on renewal. *Barnet v. Muncie Nat. Bank,* 98 U. S. 555; *Brown v. Marion Nat. Bank,* 169 U. S. 416; *Citizens' Nat. Bank v. Donnell,* 195 U. S. 369; *Bank v. Wysong & Miles Co., supra.* As a result, there could be no recovery of interest on the association loan in this case— unless defenses advanced by the bank against the pleas of usury should be valid.

The first defense to the charge of usury, advanced by demurrer to the pleas, is that the pleas failed to comply with the requirement of article 49, section 5, of the Code, that any such plea shall state the sum of money lent or advanced with the time at which the same was so lent or advanced. The pleas here do state specifically the amounts and dates of the original loans, and we do not see the ground of the objection, unless it should be in the fact that the pleas do not give the details of the renewal notes actually sued on, in addition to the details of the original loans. But the statute does not require that; it requires only the amounts and dates of the loans of the money, and these facts are given in the pleas. The pleas are, therefore, sufficient, and the demurrers to them were properly overruled. *Murphy v. Stubblefield,* 133 Md. 23. Another defense to the charge of usury is that the transaction is governed by the federal law just stated, and that under that law the indorser who did not pay excessive interest cannot recover the penalty of twice the amount of in-

terest charged either by original suit or by way of set off in a suit against him. That is true so far as it goes, but, as is shown by the decisions last cited, an indorser sued may have the benefit of the provision for the forfeiture of interest not paid, so that no interest before suit may be recovered from him, which is all the appellant has claimed in his argument in this Court, although a prayer submitted by him at the trial claimed more. The allowance of interest under the instructions given in the appellee's third prayer is affected by the present contention that all unpaid interest on the loan has been forfeited.

But a third defense to the charge of usury on the Springdale Association's loan is that by the Maryland Acts of 1916, now codified in art. 23, section 100-A of the Code, the defense of usury is no longer available in a suit on a corporation's note. The words of the statute are that "no corporation shall hereafter interpose the defense of usury in any action at law or in equity." It appears to be a literal copy of the New York statute adopted in 1850, and later adopted in Illinois and Virginia, and, in somewhat different words, in New Jersey. Except in Illinois, the provision, while procedural in form, has been held to intend that usury should not be a defense to corporation paper. *Union Estates Co. v. Adlon Construction Co.,* 221 N. Y. 183; *Salvin v. Myles Realty Co.,* 227 N. Y. 51; *Rosa v. Butterfield,* 33 N. Y. 665; *Brownell v. Freese,* 35 N. J. L. 285; *Danville v. Pace,* 25 Gratt. (Va.) 1; 6 A. L. R. 581, 586; 14 Ann. Cas. 114; *Union Nat. Bank v. Louisville N. A. & C. Ry. Co.,* 145 Ill. 208; *Stack v. Detour Lumber Co.,* 151 Mich. 21. And as a consequence of this construction an indorser, even an accommodation indorser, as well as the corporation maker, has been held barred from making this a defense. Speaking of an accommodation indorser on such a note, the Court of Appeals of New York, in *Stewart v. Bramhall,* 74 N. Y. 85, said: "As such he must abide by the condition of his principal and has no separate standing in respect to the defense of usury." And see *Rosa v. Butterfield, supra,* and the other

cases cited. The Illinois courts, as will be seen by reference to the case of *Union Nat. Bank v. Louisville N. H. & C. Ry. Co., supra,* view the statutes as rendering illegal any charge of interest above the rate fixed, even for corporation notes, although the defense cannot be interposed on these notes.

We have found little authority directly on the question of the applicability of this statute to loans by national banks. In two cases, *In re Wild,* 11 Blatchf. 243, and *Bramhall v. Atlantic Nat. Bank,* 36 N. J. L. 243, 248, it was held that the abolition of the defense on a corporation note did not relieve a national bank from forfeiture of interest, or the penalty, for exceeding the limit of seven per cent. specified in the federal law. Those courts considered the legal situation to be as if the state laws had omitted to fix any rate for such loans within the meaning of the federal law, so that the seven per cent. limit specified in the latter law for States in which the laws have not fixed a rate would apply. But it seems to us that, in view of the fact that the obvious purpose of the state statute is to leave lenders and corporate borrowers free to agree upon any rate of interest above the regular limit, the construction of the cases of *In re Wild* and *Bramhall v Atlantic Nat. Bank, supra,* is inconsistent with the purpose of the federal law, declared in many decisions of the Supreme Court (*Tiffany v. Nat. Bank of Missouri,* 18 Wall. 409), to put national banks in a position of equality with state institutions for dealing in loans. Following out that purpose, it has generally been held in later cases that in those states in which statutes permit parties to loans to agree upon interest beyond the regular limits, national banks must be held permitted to do the same thing. *Daggs v. Phoenix Nat. Bank,* 177 U. S. 549 ; *California Nat. Bank v. Ginty,* 108 Cal. 148 ; *Rockwell v. Farmers Nat. Bank,* 4 Colo. App. 562 ; *Guild v. First Nat. Bank,* 4 S. D. 566 ; *National Bank v. Bruhn,* 64 Tex. 571 ; *Wolverton v. Exchange Nat. Bank,* 11 Wash. 94. And there seems to be no substantial difference between the statutory provision as framed in those states, and that in article 23, section 100-A, of the Maryland Code. In *Daggs*

*v. Phoenix Nat. Bank, supra,* the Supreme Court said: "A national bank may charge interest at the rate *allowed* by the laws of the state or territory where it is located; and equality is carefully secured with local banks. * * * The intention of the national law is to adopt the state law, and to permit to national banks what the state law allows to its citizens and to banks organized by it." And a statement in the opinion in *National Bank v. Johnson,* 104 U. S. 271, 278, which might uphold the construction that where a state bank is left by state laws free to charge interest beyond the ordinary limit, the national law would limit national banks to seven per cent., is expressly disavowed and overruled. Our conclusion is that as to corporations in this State, national banks are free to charge any rates of interest that may be agreed upon, and that the defense of usury on the Springdale Association loan could not be sustained.

There are thirty-nine exceptions in the case to rulings on evidence, and these may be disposed of briefly, as we find no reversible error in the rulings. Many of them should not have been brought up on appeal. The first six exceptions are to the exclusion of defendant's questions on cross-examination to support his defenses by the witness produced to exhibit the note and establish the *prima facie* case for the plaintiff. It is not the purpose of cross-examination to introduce such new matter in support of affirmative defenses, and there was no error in the exclusion of the questions. *Murphy v. Stubblefield,* 133 Md. 23, 30; *Glenn v, Traction Co.* 206 Pa. 137. And see *Dugan v. Anderson,* 36 Md. 567, 588; *Herrick v. Swomley,* 56 Md. 439, 461. The rulings excepted to were rendered wholly unimportant, besides, by the full presentation of all the defenses by the cross-examination of the same witness and by examination of other witnesses later in the case. The seventh exception is to the allowance of a question on cross-examination of the defendant, seeking an admission of knowledge on his part which, in the answer, he denied having, so there is no damage to be complained of from that ruling. The next four exceptions, the eighth,

ninth, tenth and eleventh, were to the allowance of cross questions to the defendant which sought acknowledgments by him that, notwithstanding his defenses on suit, including his contention for a collateral agreement that he should not be held liable, he had previously admitted liability. These questions seem to us to have been clearly relevant and pertinent. The twelfth is to the refusal of the court to permit defendant to introduce an assignment of a claim of the Springdale Association against a defaulting officer, which the bank had refused to accept as collateral. We see no relevancy in the bank's refusal, or in the assignment refused. As the appellee points out, the defaulting officer was already liable for the loans by reason of his indorsement, and the assignment of a claim against him added nothing. Moreover, the decision that the defense of a collateral agreement for payment from the other securities alone was not properly admitted in the case, makes discussion of the other securities irrelevant.

The thirteenth exception is to the exclusion of an accountant's report of an audit of the Springdale Association books, but as the report was later admitted, there is no injury from that ruling to be complained of. The fourteenth and fifteenth are to questions on cross-examination of the defendant as to items in the account. We do not see any importance in the questions, except as they might clarify something in the account—which is not reproduced—and the answers were of no consequence in the case. We see no reason to hold the rulings on these questions erroneous. The sixteenth, seventeenth and eighteenth exceptions are to the exclusion of defendant's questions to the cashier of the bank seeking acknowledgments by him that the interest charges were usurious and illegal. The effort in these questions is not to bring out facts, but to debate with the witness the effect of the facts brought out, to have him characterize the transaction according to counsel's conception of it. There may be proper occasion for this in some cases, but there was no error in preventing it on objection in this instance, if the court

thought it wise in its discretion to do so. The questions in part called for answers as to the law. And we have found the defense of usury not maintainable in any event.

The nineteenth exception is to the exclusion of defendant's question to the cashier of the bank on possible methods of obtaining additional interest: "You are stating that there were several ways of doing it. You might in other words have taken a bonus of one and a half per cent. and done it that way?" It was a question which the court might have admitted or excluded without error in either event, if usury was considered a valid defense, for it had no appreciable effect on the case. The method suggested was not adopted by the bank in this case. And there seems to have been no need of the comparison suggested by way of explanation of the transaction as it was.

The twentieth and twenty-first exceptions bring up rulings on a question as to the relation of the balance notes to the notes for the money loaned. No facts which defendant wished to bring out were excluded by them; all were brought out by further testimony, and there would be no need of correction even if the rulings had been erroneous. Indeed, the twenty-first exception brings up a ruling in defendant's favor. The question ruled on was answered and the particular subject apparently cleared up entirely by that answer. The next three exceptions are to the exclusion of questions concerning defendant's handling of the collateral for the loans, which, as he testified, were to be resorted to for payment. We have already decided that the parol defense of an agreement relieving defendant of the liability of an indorser at the same time that his indorsement was taken, is not admissible, and, therefore, his handling of the collateral was irrelevant.

The twenty-fifth, twenty-sixth and twenty-seventh exceptions are to the allowance of questions designed, apparently, to bring out a failure by defendant to make known his contention for an agreement relieving him from liability, in discussions in which such a declaration might be thought nat-

ural if the contention had any foundation. It would seem
proper to admit the questions on that ground. The next
three exceptions concern inquiries into weaknesses of col-
lateral which defendant desired the bank to accept and real-
ize on, and discussion of the rulings would seem unnecessary
in view of our holding that the matter of realization on col-
lateral was irrelevant. There may have been some prejudice
to the defendant from the facts brought out, but they were
properly brought out, we think, in connection with his
defenses.

The thirty-first exception is to the exclusion of defendant's
question to the cashier of the bank; whether the taking of
the note with Ganster as maker was not to evade the national
law. The witness had just stated that "the reason why the
loan was not made to the Springdale Association was that the
bank could not do it legally according to the national bank-
ing law." Obviously, we think, the defendant lost nothing
by the exclusion of his question, and further discussion is
unnecessary. The exclusion of a question as to the defend-
ant's knowledge of the fact that the money loaned on the
Ganster note was for the Springdale Association is brought
up by the thirty-second exception. The question was irrele-
vant to the issues.

The thirty-third, thirty-fourth and thirty-fifth exceptions
are to the allowance of questions to the president of the
bank; whether he had been informed of the alleged conver-
sation in which the cashier was said to have agreed that there
should be no personal liability on defendant's indorsement.
As the defendant was a member of the board of directors of
the bank, and its counsel, a failure by him to make known
to his associates in the bank the unusual agreement he now
contends for might properly have some weight with the jury
in determining the existence of the agreement. As long as
the alleged agreement was discussed at all, these questions
were relevant. The question brought up for consideration by
the thirty-sixth exception was whether defendant stated his
contention at any of the conferences at which the president

of the bank was present.  Its relevancy seems sufficiently
clear without discussion.  The questions concerned in the last
two exceptions are also objected to as leading ones.  But they
seem to us entirely free from that objection.

In the question brought up by the thirty-seventh excep-
tion, an officer of the Maryland Title Company was asked as
to the condition of the title to property, a mortgage on which
formed part of the collateral from which, as defendant con-
tended, the bank was to be paid.  It was objected to by the de-
fendant as immaterial, and as hearsay, because the witness
had examined the land records with two men who assisted in
the detailed abstracts.  We find the objections not well taken.

The thirty-eighth and thirty-ninth exceptions bring up
questions to the defendant which called for a repetition by
him in rebuttal of his statements in his previous testimony,
and seem to have been excluded on that ground.  There was
no error here.

The last exception is to the ruling on the prayers for in-
structions.  The plaintiff's prayers which were granted were,
as we have found, more favorable to the defendant than was
requisite, in that they allowed for the defense of the col-
lateral agreement, and we can find no other fault in these
prayers.  They do not make any allowance for the defense
of usury, but we have found that not a valid defense.  The
defendant's special exceptions to the plaintiff's granted pray-
ers seem to us not well founded.  The defendant's first prayer
was for direction of a verdict in his favor on the Ganster
note, and we see no foundation for that.  The instructions
prayed in the second and third prayers would have directed
the jury to find for the defendant on each note if his indorse-
ments were found without any consideration passing to him.
It would seem clear that an instruction so worded could not
be given in a suit against an accommodation indorser.  Its
effect would be to rule that an accommodation indorser could
never be sued, for he always indorses without consideration
passing to him.  The defendant's fifth prayer was drawn on
the theory that he might be allowed a credit or set off of the

total of excessive interest paid. This would be against the provision of the federal law governing the case, even if the defense of usury were valid. That law provides for two consequences: (1) a recovery of twice the amount of interest paid by the person who paid it or his legal representatives, or (2) a forfeiture of all interest. There is no right given to an indorser who did not pay the excessive interest to recover or have credited to him the amount paid. *National Bank v. Wysong & Miles Co., supra.*

Having found no error in the rulings, the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*