The complainant is a bank organized under the provisions of the National Banking act. It seeks to foreclose a mortgage for $60,000, dated October 29th, 1926, made by the defendants Isaac H. Mass. and Dora Mass, his wife, Morris Benevich, widower, Samuel Berlin and Rae, his wife, and Samuel Zaretsky and Dora, his wife. It became due and payable January 28th, 1933. The complainant claims *Page 445 
thereon, a balance of $7,296 of the principal with interest from October 6th, 1936; that date being the time when this suit was instituted.
Answers and counter-claims were filed by the defendants Isaac and Dora Mass. and Samuel and Rae Berlin. Those defendants allege, in effect, that (1) the bond and mortgage was executed prior to the amendment to the Married Women's act; (2) that the title to the premises was vested in the male defendants; (3) that the principal sum of $60,000 was loaned to the male defendants; and (4) that the note for which the bond and mortgage was given as security, bears the names of the male defendants and not that of their wives.
The defendants Dora Mass. and Rae Berlin contend that while they signed the bond accompanying the mortgage, they did not receipt any part of the consideration of the loan, and, therefore, are exempt from liability on the bond, their act of signing having been done before the passage of the amendment to the Married Women's act, as it is amended by chapter 11 of the laws of 1927.
The male defendants claim, also, that the transaction was usurious; that while the principal sum of the mortgage appears to be $60,000, they actually received but $54,000; and that the complainant, at the time of the execution of the mortgage, required them to deposit a certificate of deposit in the sum of $6,000, which certificate was then and there delivered to the bank and retained by it; that on, or about, October 5th, 1930, the bank applied $2,000 of such deposit to the principal sum then due on the mortgage; and that on, or about, January 26th, 1933, it applied a further sum of $4,000 from the said deposit to the said principal.
The defendants say that the total amount of usurious interest paid between October 29th, 1926, and January 26th, 1933, amounts to $1,949.34.
Section 5197 of the United States Revised Statutes (12 U.S.C.A. §§ 85, 86, National Banking act), says a national bank may charge a rate of interest no greater than that allowed by the laws of the state in which the bank is then doing business. Section 5198 of the same act, provides: *Page 446 
"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred. That suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."
The complainant charged interest on the entire $60,000. That charge, the defendants maintain is usurious. They further say that the Usury act of this state, and not the federal act, applies to the instant case, and they claim the relief provided by the laws of this state. They point to the fact that the bank is not mentioned in the bond or the mortgage under foreclosure. Those instruments, they assert, were given by them to Matthew H. Scheel, assistant cashier of the complainant bank, who is designated in the bond and mortgage as "trustee." They were assigned by Scheel to the complainant on the day of their execution. The assignment was recorded November 13th, 1926.
An examination of paragraph 10 of the first separate defense does not sustain the defendants' contention that their transaction was with Scheel individually. That defense reads:
"On October 29th, 1926, the complainant, Passaic National Bank and Trust Company, through Matthew H. Scheel, trustee, corruptly and unlawfully within the State of New Jersey, and against the form of the statute in such case made and provided, agreed to by complainant and the defendants, that complainant should loan to the defendants the sum of $60,000, with the understanding and agreement that complainant should retain of said loan the sum of $6,000, which sum was to be held by the bank free of any right of withdrawal * * *." *Page 447 
In paragraphs 11 and 12 of the same separate defense, the defendants say that they requested the "complainant" to credit them with the $6,000 represented by the certificate of deposit, which they deposited with the bank as security for the mortgage.
In paragraph 15 of the second separate defense, the defendants allege the complainant is a corporation created, c., by virtue of the laws of the United States. And in paragraph 16, following, they allege that the complainant, through Matthew H. Scheel,trustee, agreed with the defendants that it should loan to the defendants the sum of $60,000, and that complainant, from said loan, should retain the sum of $6,000 which was to be held by it (the complainant) free of any right of withdrawal by the defendants.
In my opinion, there is no doubt that the $6,000 was deducted from the principal sum of $60,000 and retained by the bank; and that interest was charged on the full amount of the principal from the date of the execution of the mortgage, and for the periods above mentioned. The defendants were charged with interest on moneys which they had never received. The remedy of the defendants under the circumstances comes under section 5198 of the National Banking act, above quoted.
I am satisfied that the application for the loan was made by the defendants directly to the bank; that the bank advanced the sum to the defendants for which they executed a note and a bond and mortgage as additional security, which bond and mortgage were made payable to Scheel as trustee; that he was the agent, acting for and in behalf of the bank, which fact was known to the defendants; and that immediately upon the execution of the bond and mortgage and the delivery thereof to him, he, Scheel, thereupon assigned the same to the complainant.
In Barnet v. Muncie National Bank of Muncie, Indiana,98 U.S. 555, 559; 25 L.Ed. 212, the supreme court of the United States held:
"The statutes of Ohio and Indiana upon the subject of usury may be laid out of view. *Page 448 
"Where a statute creates a new right or offense, and provides a specific remedy or punishment, they alone apply. Such provisions are exclusive."
In Klemm v. Labor Co-operative National Bank of Paterson,117 N.J. Law 284, the court of errors and appeals (on October 26th, 1936) said:
"National banks are agencies of the federal government, created for public purposes, and are subject to the paramount authority of the congress. Regulation conflicting with federal laws isbeyond the sphere of legitimate state action." (Italics mine.)
In Tiffany v. National Bank of the State of Missouri,85 U.S. 409, 413; 21 L.Ed. 862, it was held by the supreme court that:
"In an action like the present, brought to recover that which is substantially a statutory penalty, the statute must receive a strict, that is a literal construction. The defendant is not to be subjected to a penalty unless the words of the statute plainly impose it."
National Bank of Auburn v. Lewis, 75 N.Y. 516;31 Am. Rep. 484. In Brown v. Marion National Bank of Lebanon, Kentucky,169 U.S. 416, 421; 42 L.Ed. 801, the supreme court of the United States held in part:
"The last section [5198] clearly makes a difference between interest which a note, bill, or other evidence of debt held by a national bank `carries with it or which has been agreed to be paid thereon,' and interest which has been `paid.'
"If a bank, which violates that section, sues upon the note, bill, or other evidence of debt held by it, the debtor may insist that the entire interest, legal and usurious, included in his written obligation and agreed to be paid, but which has not actually been paid, shall be either credited on the note, or eliminated from it, and judgment given only for the original principal debt, with interest at the legal rate from the commencement of the suit."
In Talbot v. First National Bank of Sioux City, Iowa,185 U.S. 172, 181; 46 L.Ed. 857, it was held:
"2. Section 5197 authorizes a national bank to charge the rate of interest fixed by the laws of the state in which the *Page 449 
bank is doing business. The consequences of a charge in excess of such rate are expressed in section 5198, to be as follows: [the court here quotes section 5198 of the act verbatim, and then proceeds to say]:
"Two cases are provided for (1) where illegal interest has been taken, received or charged. (2) Where illegal interest has been paid. In the first case the entire interest which the `evidence of debt carries with it' shall be deemed forfeited. In the second case, the person who has paid `the greater rate of interest may recover the amount of interest thus paid.'"
To the same effect is Tiffany v. The National Bank of theState of Missouri, supra. In Planters' National Bank ofRichmond v. Wysong Miles Co., 177 N.C. 380;99 S.E. Rep. 199, the supreme court of the United States refused certiorari
in 250 U.S. 665; 40 Sup. Ct. 13, to review the action of the North Carolina supreme court, which held that:
"Second. While the transaction is usurious, and the plaintiff can recover only the principal of the debt (Barnet v. MuncieNational Bank, 98 U.S. 555; 25 L.Ed. 212), the defendant cannot counter-claim for twice the amount of interest actually paid, because the federal court of last resort, whose decisions upon the construction of the statute are both authoritative and conclusive upon us, has decided, in several cases, that the recovery cannot be had by way of counter-claim, but that payment of the penalty can be enforced only by a separate and independent action `in the nature of an action of debt.' The principle is well stated by that court in Barnet v. Muncie National Bank,supra (98 U.S., at pp. 555, 558)."
The defendants plead the actual payments of interest by way of first separate defense and second separate defense and claim that they are entitled to credit for the usurious interest alleged to have been actually paid.
The above cited cases (and many others not here cited), express the principles applicable to the instant case, and are a complete answer to the allegations of the defendants. As to usurious interest actually paid, the sole, and exclusive, remedy is that which is provided by the National Banking act, to wit: The institution of a separate and independent *Page 450 
action to recover it. The payment cannot be set up by way of defense, set-off or cross-action in a proceeding such as in the instant case. Further, the action to recover must be brought within two years from the time when the usurious transaction occurred.
In Hazeltine v. Central Bank of Springfield, 183 U.S. 132,137; 46 L.Ed. 118, the court held:
"That the state statutes upon the subject of usury should be laid out of view and that where a statute created a new right or offense and provided a specific remedy or punishment, that remedy alone could apply; that the payment of usurious interest being distinctly averred, it could not be recovered by way of offset or payment of the bill in suit, and that the same rule applied to the payment of interest upon other bills of exchange which the defendant sought to recover back."
Penrose v. Canton National Bank of Canton, 147 Md. 200;127 Atl. Rep. 852, is to the same effect; likewise the cases ofChipman v. Farmers' and Merchants' National Bank, 121 Md. 343;88 Atl. Rep. 151, 157 (Maryland Court of Appeals); SchuylerNational Bank v. Gadsden, 191 U.S. 451, 461; 48 L.Ed. 258;Wysong Miles Co. v. Bank of North America, 262 Fed. Rep. 130
(C.C.A. 4th).
Since the defendants allege the payments were made between the period of October 29th, 1926, and January 26th, 1933, which is more than two years prior to the institution of this suit, within which time they have failed to follow the mandate expressed in section 5198 of the National Banking act, this court is without power to give them the relief they seek.
The evidence as to the third cause of action of the counter-claim does not support the allegations expressed within it.
I am satisfied that the bond and mortgage of $9,000 mentioned in paragraph 3 of the counter-claim, was canceled and discharged of record at the instance of the defendants. These defendants argue to the contrary, but I am convinced their evidence is insincere and not the facts. The sum of $830, realized through that transaction, was properly credited to the *Page 451 
defendants, and that credit met with the approval of these defendants. The evidence shows that at the time the satisfaction of the bond and mortgage was signed, by the complainant, the defendants were present, and were also represented by an attorney, Robert J. Bunevich, a son of one of the defendants, and they were aware of, and gave assent, to the act.
The defendants, in my opinion, have not maintained their alleged defense that Scheel, the assistant cashier of the bank, had been guilty of oppression and unfair dealing. The defendants, it appears, indicated no dissatisfaction with the treatment they had received from the bank or its officers until after these proceedings were instituted. Their relations with the bank, from the time that the mortgage was executed, down to the time of the institution of this suit, or shortly before it, appear to have been satisfactory to the defendants.
While the female defendants are co-obligors on the bond with the male defendants, there is nothing in the testimony to indicate that they were in any manner interested in the original transaction. They received no consideration therefrom, or by reason of it. This proceeding affects their dower interest. The mortgage in the instant case was executed prior to the passage of chapter 11 of the laws of 1927. Broadman v. ColonialBuilding-Loan Association, 118 N.J. Eq. 275; Mawhinney v.Cassio, 63 N.J. Law 412; Hamburger v. Hamburger, 8 N.J. Mis.R. 3; 148 Atl. Rep. 15 (second case); Van Deventer v. VanDeventer, 46 N.J. Law 460; Johnston v. Hauseman, 10 N.J. Mis.R. 910; 161 Atl. Rep. 351 (first case).
The complainant is entitled to a decree for the balance due, and, as conceded by it, interest only from the date of the institution of this suit.
I shall advise an order to conform with the conclusions hereinabove expressed. *Page 452