MILL FACTORS CORPORATION, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN JUAN, Respondent.

No. O-68-56.    Decided June 3, 1969.

*González, Jr., González-Oliver & Novak* and *Eduardo Colón Castro* for appellant. The respondent Registrar appeared by brief.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

On October 11, 1967 the International Yarn Corporation, a domestic corporation with factory in Carolina, Puerto Rico, issued a promissory note for $250,000 in favor of the appellant, the Mill Factors Corporation, a corporation organized in Delaware with main office in New York. The Mill Factors, as its name indicates, is engaged in providing financing to commercial and industrial enterprises. The interest of the above-mentioned note was fixed at a rate of 1/30 of one percent per day, equal to 12% per annum. The interest rate was fixed on the basis of days as is usual in that kind of transaction between financing companies and industrial firms.

On the same aforesaid date the debtor corporation executed a personal-property mortgage as security for the promissory note. The mortgage was presented for registration in the Fourth Section of San Juan, located in Río Piedras, of the Property Registry of Puerto Rico. 30 L.P.R.A. §§ 1748 and 1740. The registrar refused to record the mortgage and inserted the following note at the end of the document:

"Record at folio 263 of volume 2HBM entry 525 is hereby denied, for having observed that the interest charged in the

mortgage contract violates the provisions of the Usury Act and the decision in the case J. E. Candal & Co. v. Rivera, 86 P.R.R. 481; the record requested is denied entering instead a cautionary notice for 120 days in favor of the creditor. San Juan, January 31, 1968."

Appellant makes the two following assignment of errors: (1) That the registrar erred in interpreting the usury and corporation laws, and (2) that he exceeded his functions in disregarding the Corporation Law. The second assignment, as alleged and discussed by appellant, is a corollary of the first one and depends on it. We will discuss them jointly.

As it may be seen, the question raised is whether the registrar can refuse to record a mortgage which secures an obligation assumed by a corporation because of the fact that the interest agreed upon exceeds the rate of eight percent per annum established by the "Act to fix a legal rate of interest on all obligations," of March 1, 1902, as amended, incorporated into the Civil Code as § 1649; 31 L.P.R.A. § 4591.

The situation in the case at bar is similar to the one we examined in *Borges* v. *Registrar*, 91 P.R.R. 106 (1964), in the sense that in this case, as in *Borges*, the State through one of its agencies tells the appellant that it may do something and through another of its agencies tells it that it may not. We explain ourselves below.

The so-called Usury Act, which is the aforesaid Act of 1902, provides in its pertinent part that:

"[N]o rate of interest shall be fixed by special agreement in excess of nine (9) dollars a year on each one hundred (100) dollars or upon its equivalent in value, when the capital the object of the loan or of the agreement does not exceed three thousand (3,000) dollars, and eight (8) dollars a year on each one hundred (100) dollars when the capital passes said sum."— 31 L.P.R.A. § 4591.

The aforesaid text of the act is clear and we believe that it needs no further elaboration. The realities and the economic

necessities have forced the lawmaker to make various exceptions to the general rule of the Act of 1902. One of these exceptions is designed to propitiate the availability of money on credit for low income persons who may need small personal loans. This is the "Small Personal Loan Act," Act No. 106 of June 28, 1965; 10 L.P.R.A. § 941 *et seq.*[1]

Two other exceptions to the general rule as to maximum interest permitted by law are designed to attend the other extreme of the money market. One of them is the provision of the Corporation Law involved herein. It is § 1206 of the General Corporation Law of Puerto Rico, Act No. 3 of January 9, 1956; 14 L.P.R.A. § 2206, which reads as follows:

"No corporation shall plead any legislation against usury in any court as a defense in any suit instituted to enforce the payment of any bond, note or other evidence of indebtedness issued or assumed by it."

It is the purpose of said provision to open the money market to domestic corporations so that the latter may get financing under equal conditions as their competitors, the foreign corporations.[2]

The other exception to the general rule of the Act of 1902, designed also, as the former, to provide credit for

---

[1] See the joint report of the Industry and Commerce, Treasury, and Judiciary Committees, on House Bill No. 319, which became the aforesaid Act No. 106, 19 Journal of Proceedings 1661, especially 1662, May 22, 1965.

[2] When the House of Representatives discussed the aforesaid § 1206 of the Corporation Law in force which provides that the corporations may not allege usury laws as defense, Representative Arcilio Alvarado expressed himself as follows:

"And we are not making here a Corporation Law simply to make it theoretically better from a juridical point of view, no. We are making an instrument which we want to be an instrument of creation. It is not to bring ourselves up-to-date with the legislation of the other states. It is in order to make an instrument which develops investment in the country and in its enterprises, of the country's capital; an instrument which may put the economical machinery to work better. This is the fundamental purpose of this law. That is the main reason why we are making it."—7 Journal of Proceedings 553 (1955).

commercial and industrial purposes, is the one contained in the Factor's Lien Act, applicable to corporations as well as to natural persons. Act No. 86 of June 24, 1954; 10 L.P.R.A. § 551 *et seq*. Said Act provides in its § 9 (10 L.P.R.A. § 559) the following:

"Without regard to any restriction or penalty established by law, any natural or juridic person borrowing the sum of $1,500 or more in a single transaction for any industrial or commercial factors' lien contracts in accordance to this chapter, shall have power to make contract, incur obligations and borrow money, either in this Commonwealth or elsewhere, at such rates of discount for services considered acceptable and no such debtor of this type shall plead any statute against usury . . . ."

Said Factor's Lien Act also provides that the same "shall be liberally interpreted in order that its purposes may be achieved in the most effective manner" and that a substantial compliance with its provisions shall be sufficient for the validity *of a lien* and to give jurisdiction to the Courts of Puerto Rico to enforce such liens. Section 10 of the Act; 10 L.P.R.A. § 560.

■ The same good motivation of the lawmaker—the social purpose or general welfare pursued by the laws—is the one which justifies and underlies the general rule of the Act of 1902 and the exceptions to said general rule for the too little and for the too big, economically speaking, which constitute the above-mentioned Small Personal Loan Act, the Corporation Law, and the Factor's Lien Act.[3]

The dilemma which we have previously mentioned in which the appellant is found, is that while the Legislature tells it, in essence, through the Corporation Law that said corporations may take money on loan at an interest greater than 9 percent, the Registry of Property, another public agency,

---

[3] For a different aspect of this question, the one about installment sales of consumers' goods, see *Monclova* v. *Financial Credit Corp.*, 83 P.R.R. 742 (1961).

through its interpretation, in this case of the previously discussed legislation, tells it that the corporations cannot do such a thing. We say that in essence, or practically, such is the situation since the law exempts the corporations from the terms of the Act of 1902 and it cannot be pretended that he who loans a quarter of a million dollars does it without requiring the best possible security, and what would be a better security than the recording, in the Registry of Property, of the mortgage which secures the promissory note? The power of recording the mortgage is a necessary power derived from the power of performing the loan transaction which the law expressly permits and authorizes. The contrary would be a nonsense. We may not presume that the law contemplates a nonsense. The State cannot permit and at the same time prohibit a juristic act.[4]

■ The registrar improperly applied our decision in the case of *J. E. Candal & Co.* v. *Rivera*, 86 P.R.R. 481 (1962), to the situation of the case at bar. In the facts said decision is distinguishable from the instant case. In *Candal* the contract stipulating greater interest than the one permitted by the Act of 1902 was executed between natural persons, so that the debtors could raise the defense of usury. Therein the contract was originally vitiated. In the case at bar the debtor is a corporation which, by virtue of the Corporation Law, is exempt from the Usury Act. The contract executed between the Yarn Corporation and the Mill Factors is perfectly legal. Besides, what we decided in *Candal* was that Canino, natural person, could not "evade his obligation to pay plaintiff's legitimate credits." "To decide the contrary," we said therein, "would be to permit the use of the corporate fiction to evade compliance with legitimate obligations." In *Candal* we pierced the corporate veil in order to avoid such iniquity.

---

[4] See 1-2 Castán, *Derecho Civil Español, Común y Foral* 497 *et seq.*, 9th ed. (1955).

■ We also decided therein that the corporate veil having been pierced the natural person who was liable could set up the defense of usury. Of course, if the corporate veil had not been pierced the corporation could not raise such defense and nothing in that case decides the contrary. In the case at bar there is nothing to make necessary, or proper, or to justify the piercing of the corporate veil. That matter is not in controversy. It is not sought either to use the corporate fiction to evade compliance with legitimate obligations. On the contrary, it is sought to record a personal-property mortgage precisely to secure legitimate obligations of the debtor corporation.

The contemporary jurisprudence supports the position we have adopted herein. Precisely because more than a century ago *Dry Dock Bank* v. *American Life Ins. & Trust Co.*, 3 N.Y. 344 (1850) was decided like the registrar requests us to decide herein, legislation was passed in New York to preclude the corporations from raising the defense of usury. The legislatures of many states did the same. Generally the courts have considered that said legislation has the effect of repealing the so-called laws of usury as far as corporations are concerned and they interpret said exception liberally in order to allow the corporate financial transactions. *Curtis* v. *Leavitt*, 15 N.Y. 9 (1857); *The Vigilancia*, 73 Fed. 452 (1896); *Penrose* v. *Canton Nat. Bank*, 127 Atl. 852 (1925).

The jurisprudence in that sense is quite abundant and we would gain nothing by copying it here. See the same in the annotation *Statute denying defense of usury to corporation* in 63 A.L.R.2d 924. See also, Katz, *Usury Laws and the Corporate Exception*, 23 Md. L. Rev. 51 (1962).

Our decision today, of course, refers to cases of bona fide corporations. We are not considering a situation in which a natural person has incorporated—or that he has been required to incorporate—for the purpose of violating the Act of Usury. Such operation would not be recommendable and would be

extremely risky. On this matter see 63 A.L.R.2d 954 *et seq.* See also, Harrell, *Mortgage Investments and the Usury Problem,* 10 Clev.-Mar. L. Rev. 343 (1961); Rivkind, *Usury, Inc. —Incorporation to Avoid Usury Laws,* 7 Miami L.Q. 375 (1953); Note, *Corporations—Denial of the Defense of Usury Limited,* 30 St. John's L. Rev. 126 (1955); Note, *The Corporate Device as a Cover for Usury,* 24 Fordham L. Rev. 715 (1956). As it is known, the courts shall pierce the corporate veil when the corporate personality is used to defeat the public policy or to violate the law. *South P.R. Sugar Corp.* v. *Sugar Board,* 88 P.R.R. 42 (1963) and *J. E. Candal & Co.* v. *Rivera, supra.*

For the foregoing reasons the note appealed from will be reversed and the Registrar will be ordered to record the personal-property mortgage object of this appeal.